JOSEPH RESMAN, Plaintiff-Appellee, *v.* PERSONNEL BOARD OF THE CITY
OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 80-1802

Opinion filed May 26, 1981.—Rehearing denied June 9, 1981.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and
Wayne T. Oesterlin, Assistant Corporation Counsel, of counsel), for appellants.

John P. Murray, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Joseph Resman brought an action in the circuit court of Cook County for administrative review of a decision of defendant Personnel Board of the City of Chicago. The personnel board found that plaintiff, a lieutenant in the Chicago Fire Department, had violated city ordinances and fire department regulations by residing outside the city of Chicago. The board ordered plaintiff discharged from the fire department. The court below reversed the order of defendant board on the ground that plaintiff was not given a written warning that his statements during an investigative interrogation could be used against him. The defendant board has appealed this decision.

The sufficiency of the evidence is not in issue, so we omit unnecessary detail in reciting the facts. Plaintiff has been a firefighter since 1961. In 1970, plaintiff and his family moved to South Holland, Illinois. Plaintiff subsequently took an apartment, which he shared with another man, at 7900 S. Troy in Chicago. Plaintiff remained married to his wife. Some of plaintiff's personal documents, such as his driver's license and voter's registration, show a Chicago address for plaintiff. Other items, including bills and a joint bank account, show a South Holland address. Plaintiff's wife has not been employed during the period of plaintiff's claimed Chicago residency, and plaintiff remains the sole support of his wife and three children, one of whom was born after the move to South Holland. On two mornings in September 1978, an investigator for the Internal Affairs Division of the fire department observed plaintiff leaving the South Holland residence on his way to work.

On September 29, 1978, plaintiff was called before Captain Ryan of the Internal Affairs Division for an investigative interview. The record does not reveal what took place at this interview, and no statement made by plaintiff during the course of this interview was introduced at the subsequent personnel board hearing. On April 23, 1979, plaintiff was formally notified of the charges against him. At no time was plaintiff given a written or an oral warning that admissions he might make could be used as the basis for charges against him.

The trial court specifically found that section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—1—1 *et seq.*) applied to the instant case. Section 10—1—18 provides, *inter alia*, that:

"Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must

be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge. * * *" (Ill. Rev. Stat. 1979, ch. 24, par. 10—1—18.)

The trial court also relied on *Palcek v. City of Chicago Heights* (1979), 74 Ill. App. 3d 702, 393 N.E.2d 1218. In *Palcek*, the plaintiff was a police officer whose dismissal proceedings were governed by section 10—2.1—17 of the Illinois Municipal Code. The court in *Palcek* observed that sections 10—1—18 and 10—1—18.1 of the Municipal Code, which sections did not apply to plaintiff *Palcek* but applied to other municipal employees, provide for a written warning prior to interrogation of an employee. Section 10—2.1—17 contains no such provision. In order to foreclose an equal protection problem, the *Palcek* court read the requirements of sections 10—1—18 and 10—1—18.1 into section 10—2.1—17, and held that the plaintiff's dismissal without such a warning was improper. See *Palcek*, at 706-07.

A recent decision in the second district appellate court has rejected the reasoning in *Palcek*. In *Lupo v. Board of Fire & Police Commissioners* (1979), 82 Ill. App. 3d 449, 402 N.E.2d 624, the court refused to find a violation of equal protection in the disparity between sections 10—1—18 and 10—1—18.1, and section 10—2.1—17. (82 Ill. App. 3d 449, 455-56.) Putting aside the equal protection issue for the moment, we find the *Palcek* case inapposite. The *Palcek* court assumed that section 10—2.1—17 of the Illinois Municipal Code applied because the defendant city of Chicago Heights never introduced evidence that any Chicago Heights ordinance governed the proceedings. (*Palcek*, at 706.) In the instant case, the personnel board has, from the beginning, asserted that section 10—1—18 does not apply because the city of Chicago has exercised its home rule powers and enacted a substitute personnel code.

■■ ■ It is well settled that the home-rule provision of the Illinois Constitution (Ill. Const. 1970, art. VII, §6) allows a home-rule municipality to enact an ordinance that supersedes a conflicting State statute passed prior to the effective date of the 1970 Constitution. (See, *e.g.*, *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527, 343 N.E.2d 919, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95; *Scott v. Rochford* (1978), 66 Ill. App. 3d 338, 341, 384 N.E.2d 19, *aff'd* (1979), 77 Ill. 2d 507, 397 N.E.2d 801.) Consequently, the city of Chicago had the power to supplant the civil service provisions of the Illinois Municipal Code with its own personnel ordinance. As plaintiff points out, Chicago's personnel ordinance is silent on the subject of warnings prior to investigative interrogations. Plaintiff interprets this omission as evidence that the

city has elected to remain bound by the requirements of section 10—1—18. The more pertinent inquiry, however, is whether the city council intended its personnel code (chapter 25.1 of the Municipal Code of Chicago) to effectively replace the civil service provisions of the State act (article 10, division 1 of the Illinois Municipal Code). That question is answered in section 25.1—1 of the city's municipal code: "It is the general purpose of this ordinance * * * to establish a system of personnel administration * * * by substituting a public employment system superseding the Civil Service System now operating within the City of Chicago pursuant to the law of the State of Illinois." (Chicago, Ill., Mun. Code §25.1—1 (1976).) We therefore find that the trial court's view that section 10—1—18 controlled plaintiff's dismissal was erroneous.

■■ Plaintiff contends that chapter 25.1 of the Municipal Code of Chicago, even if it applies, can only be saved from constitutional attack by reading in the provisions of section 10—1—18. In this connection, plaintiff relies on the equal protection argument in *Palcek*. Again, however, *Palcek* is inapposite. The court in *Palcek* read three corresponding sections of the Illinois Municipal Code together, citing the principle of *in pari materia*. (See *Palcek*, at 706.) *In pari materia* is a rule of statutory construction and refers to the fact that the intention of the legislature can be deduced from different statutes that relate to the same subject. (See *People ex rel. Harrell v. Baltimore & Ohio R.R. Co.* (1951), 411 Ill. 55, 59, 103 N.E.2d 76.) Clearly, the principle of *in pari materia* can have no application to the instant case, since the intent of the Chicago City Council in enacting chapter 25.1 cannot be divined by resort to a statute passed by the Illinois legislature.

Plaintiff, in pressing his equal protection argument, also states that there are differing personnel procedures for firemen and policemen. Plaintiff has apparently misread section 25.1—13 of the Municipal Code of Chicago. That section provides that the city's personnel ordinance shall not affect the powers and duties of the Police Board, as set forth in section 10—1—18.1 and other sections of the Illinois Municipal Code. Section 25.1—13 does not except police officers from the operation of chapter 15.1, and section 25.1—3 makes it clear that police officers are included within the city's personnel scheme. See Chicago, Ill., Mun. Code §§25.1—3(5), 25.1—13 (1975).

■■ The most that can be said, then, is that certain municipal employees in cities other than Chicago have more procedural rights than Chicago's employees. The privilege denied plaintiff was the right to a *Miranda*-type warning prior to an administrative interrogation. In the context of an administrative proceeding where the employee faces no criminal penalties, this court has held that there is no constitutional right to a *Miranda*-type admonition. (See *Distaola v. Department of Registration & Educa-*

*tion* (1979), 72 Ill. App. 3d 977, 982, 391 N.E.2d 489.) In the instant case, the disparate treatment afforded municipal employees in different Illinois cities is not the result of a legislative classification, but, rather, demonstrates the variety of responses that two distinct legislative bodies (the Chicago City Council and the Illinois legislature) can provide when faced with similar problems. The approach adopted by the city of Chicago does not violate any constitutional right of the plaintiff and, since the city's personnel code provides for like treatment of all employees subject to the ordinance (see *Smith v. Murphy* (1943), 384 Ill. 34, 40, 50 N.E.2d 844), we do not find a violation of equal protection of the law.

In sum, we find that the only applicable statutory provision is chapter 25.1 of the Municipal Code of Chicago, which does not provide for pre-interrogation admonitions. Since the trial court based its reversal of the personnel board solely on the absence of the warning provided for in section 10—1—18 of the Illinois Municipal Code, the decision of the trial court is reversed.

Reversed.

DOWNING and PERLIN, JJ., concur.