JOHN M. DINEEN *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 86—0585

Opinion filed January 23, 1987.

Judson H. Miner, Acting Corporation Counsel, of Chicago (Ruth M. Moscovitch and Sharon Baldwin, Assistant Corporation Counsel, of counsel), for appellants.

Joel D'Alba and Reed Lee, both of Chicago (Asher, Pavalon, Gittler & Greenfield, Ltd., of counsel), for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order declaring invalid a provision of the collective-bargaining agreement between the city of Chicago and the Fraternal Order of Police, Lodge No. 7, that requires any police officer who runs for political office to take an unpaid leave of absence upon the filing of the petition for office, and enjoining defendants from enforcing their mandatory leave-of-absence policy. Defendants contend that the court's order rests upon a misinterpretation of an act of the legislature.

By letters dated January 13, 1986, defendants advised plaintiffs Gottlieb and Preski, both of whom were active-duty police officers employed by the city of Chicago, that because they were candidates for public office, they would be required to take a leave of absence from the police department. The letters cited the last paragraph of section 10.3 of the collective-bargaining agreement in effect between the city of Chicago and the Fraternal Order of Police, Lodge No. 7, which was ratified and adopted as a city ordinance on September 18, 1984, and Police Department General Order 84—7, addendum 6, item I—E—1.

Section 10.3 provides in pertinent part that "[a]ny officer who runs for a political office shall take a leave of absence upon the filing of the petition for office pursuant to the Employer's regular leave of absence policy." The departmental general order is similarly worded. The "regular leave of absence policy" to which the agreement and the general order refer specifies that the leave of absence is without pay. Each officer was advised further that he would face disciplinary action if he did not promptly apply for a leave of absence.

On January 22, 1986, Gottlieb and Preski,[1] together with the Fraternal Order of Police, Lodge No. 7, and its president, John M. Dineen, filed a complaint against defendants seeking declaratory and injunctive relief from the enforcement of the leave-of-absence policy. The complaint alleged that section 3 of Public Act 84—1018 (the Act) preempted and invalidated the final paragraph of section 10.3 of the collective-bargaining agreement and addendum 6, item I—E—1, of General Order 84—7.

Section 1 of Public Act 84—1018, which was enacted and became effective on October 30, 1985, added new sections to division 1 (civil service in cities) and division 2.1 (board of fire and police commissioners) of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1986, ch. 24, par. 1—1—1 *et seq.*). These new sections bar a municipality covered under either division from making or enforcing "any rule or ordinance which will in any way inhibit or prohibit any employee from exercising his full political rights to engage in political activities, including the right to petition, make speeches, campaign door to door, and to run for public office, so long as the employee does not use his official position to coerce or influence others and does not engage in these activities while he is at work on duty." Ill. Rev. Stat. 1985, ch. 24, pars. 10—1—27.1, 10—2.1—5.1[2]

Section 3 of the Act provides:

"Pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution, this Act specifically denies and limits the exercise by a home rule unit of any power which is inconsistent with this Act, and all existing laws and ordinances which are inconsistent with this Act are hereby superseded. This Act does not preempt the concurrent exercise by home rule units of powers consistent with this Act." Pub. Act 84—1018, sec. 3, eff. Oct. 30, 1985.

---

[1]Preski later withdrew as a plaintiff.

[2]Section 2 of the Act applies the same restrictions to fire protection districts. Ill. Rev. Stat. 1985, ch. 127½, par. 37.16a.

In an order entered on February 10, 1986, the circuit court denied defendants' motion to strike and dismiss plaintiffs' complaint, declared that section 3 of Public Act 84—1018 superseded the last paragraph of section 10.3 of the collective bargaining-agreement and prevented the city of Chicago from requiring any police officer to take a leave of absence upon filing a petition for political office and running for political office, and enjoined defendants from enforcing their mandatory leave-of-absence policy. This appeal followed.

Defendants contend that the court misinterpreted Public Act 84—1018. We agree.

■ Section 1 of the Act applies only to municipalities covered under either division 1 (civil service in cities) or division 2.1 (board of fire and police commissioners) of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 1—1—1 *et seq.*). No municipality is required to operate under division 1; it is an optional provision. (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—43.)[3] Although the city of Chicago formerly operated under division 1, the city, by exercise of its home rule powers, has chosen to remove itself from the operation of division 1, replacing it with its own personnel code. (Chicago Municipal Code, sec. 25.1—1.) The ordinance adopting the code states, in relevant part, that "[i]t is the general purpose of this ordinance *** to establish a system of personnel administration *** by substituting a public employment system superseding the Civil Service System now operating within the City of Chicago pursuant to the law of the State of Illinois." (Chicago Municipal Code, sec. 25.1—1.) The city of Chicago had the power to supplant the civil service provisions of the Illinois Municipal Code with its own personnel ordinance. (*Resman v. Personnel Board* (1981), 96 Ill. App. 3d 919, 921, 422 N.E.2d 120.) Thus, the city of Chicago is not a "municipality covered under this Division 1" (96 Ill. App. 3d 919, 921-22, 422 N.E.2d 120), and section 1 of Public Act 84-1018 does not, by its own terms, apply to the city.[4]

Plaintiffs argue that "municipalities in the defendant's position are the clear subjects of the unambiguous provisions of section 3" and that "the most straightforward interpretation of the Act as a whole is that section 3 applies the general substantive protections contained in sections 1 and 2 [to] the Defendant City and to other municipalities which have opted out of the State's statutory provisions for civil ser-

[3]Division 2.1 does not apply to any municipality with a population in excess of 250,000. Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—1.

[4]Section 2 of the Act, as we have noted previously, applies to fire protection districts. Ill. Rev. Stat. 1985, ch. 127½, par. 37.16a.

vice." We disagree.

■ Section 3 states in part that the Act "specifically denies and limits the exercise by a home rule unit of any power *which is inconsistent with this Act*," and that "all existing laws and ordinances *which are inconsistent with this Act* are hereby superseded." (Emphasis added.) No rule or ordinance adopted by a municipality not covered by division 1 or division 2.1 can be inconsistent with the Act, however, because, as plaintiffs admit, section 1 of the Act applies only to municipalities covered by division 1 or division 2.1. Where, as here, the language of a statute is unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and a court has no right to look for or impose another meaning. (*Roth v. Department of Public Aid* (1982), 109 Ill. App. 3d 457, 460, 440 N.E.2d 910.) Even if the Act were susceptible of two interpretations, the legislative history of the statute indicates that it was intended to apply only to municipalities operating under division 1 or division 2.1 of the Illinois Municipal Code and to fire protection districts.

In explaining House Bill 1539 (which was enacted as Public Act 84—1018), Representative Curran, one of its sponsors, stated that the bill would grant "political rights to local policemen, local firefighters, members of fire protection districts and civil service employees." (84th Ill. Gen. Assem., House Proceedings, May 23, 1985, at 49.) The bill was passed by the General Assembly but was vetoed by Governor Thompson. Urging the House of Representatives to override the governor's veto, Representative Saltsman, another sponsor, stated that "House Bill 1539 would have granted full political rights and privileges to those employees covered under the civil service, police and fire commission and fire protection district statutes," and specifically referred to "these mini-[H]atch [A]cts that are set up by these smaller municipalities." (84th Ill. Gen. Assem., House Proceedings, October 16, 1985, at 131.) When asked if the bill would apply to volunteer firefighters, Representative Saltsman answered, "If they [the firefighters] were covered by one of these three Acts [two sections of the Illinois Municipal Code and one section of the act regulating fire protection districts], then they [the units of local government] would not be allowed to provide that their municipality had a mini-[H]atch [A]ct at this time." 84th Ill. Gen. Assem., House Proceedings, October 16, 1985, at 132.

After the House of Representatives voted to override the governor's veto, House Bill 1539 was again considered by the Senate. In recommending an override vote, Senator Demuzio stated that House

Bill 1539 "would have granted full political rights and privileges to those individuals who were covered under civil service, police and fire commission or the [f]ire [p]rotection [d]istrict [s]tatutes in Illinois." (84th Ill. Gen. Assem., Senate Proceedings, October 30, 1985, at 60.) The Senate joined the House of Representatives in voting to override the Governor's veto.

This brief review of the House and Senate debates on House Bill 1539 leaves no doubt that Public Act 84—1018 was intended to apply only to municipalities operating under division 1 or division 2.1 of the Illinois Municipal Code and to fire protection districts. This conclusion is buttressed by the legislature's explicit reliance on paragraphs (h) and (i) of section 6 of article VII of the Illinois Constitution as authority for denying and limiting the exercise by a home rule unit of any power which is inconsistent with the Act and superseding all inconsistent laws and ordinances.

■ Where a State statute actually exercises a governmental power or function (or authorizes a State agency to do so), the General Assembly may, by a simple majority vote, either deny the home rule units the power to act in that area or limit the exercise of home rule power to concurrent regulation not inconsistent with the State action (Ill. Const. 1970, art. VII, secs. 6(h), 6(i)); where, however, the State itself is not exercising or performing a power or function, the power to act may be denied to home rule units only by a three-fifths majority vote of both houses of the General Assembly (Ill. Const. 1970, art. VII, sec. 6(g)). (See *United Private Detective & Security Association, Inc. v. City of Chicago* (1976), 62 Ill. 2d 506, 511-15, 343 N.E.2d 453.) The statute must specifically express a restrictive purpose. Ill. Rev. Stat. 1985, ch. 1, par. 1106; *Rozner v. Korshak* (1973), 55 Ill. 2d 430, 435, 303 N.E.2d 389; *City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 340, 388 N.E.2d 384.

The State does not exercise the function of providing a municipal civil service system except for those municipalities that operate under division 1 or division 2.1 of the Illinois Municipal Code.[5] Therefore, to

---

[5]Although under paragraphs (h) and (i) of section 6 of article VII the legislature could have enacted an exclusive scheme of State regulation which would not have to be exhaustive or exclusive (see *United Private Detective & Security Association, Inc. v. City of Chicago* (1976), 62 Ill. 2d 506, 514, 343 N.E.2d 453), there is no indication in the language or the legislative history of Public Act 84—1018 that the General Assembly intended to define the political rights of all municipal employees in Illinois. The Act does not establish a separate division of the Municipal Code to regulate the political activities of all municipal employees. Instead, the Act merely amends two divisions of the Code to which the city of Chicago is not subject.

deny municipalities not operating under either division the power to pass ordinances inconsistent with section 1 of the Act, the General Assembly would have had to have acted pursuant to section 6(g) of article VII of the Illinois Constitution. But, as the Act itself provides, the legislature acted pursuant to sections 6(h) and 6(i). Thus, the only home rule units of local government that are barred from making or enforcing "any rule or ordinance which will in any way inhibit or prohibit any employee from exercising his full political rights to engage in political activities" are those which operate under division 1 or division 2.1 of the Illinois Municipal Code. Contrary to plaintiffs' suggestion, this interpretation of the Act does not render section 3 "mere surplusage."

■ A statute intended to limit or deny home rule powers must contain an express statement to that effect. (Ill. Rev. Stat. 1985, ch. 1, par. 1106; *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 108, 421 N.E.2d 196; *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 528, 343 N.E.2d 919.) Thus, section 3 of Public Act 84—1018 was necessary to limit home rule units operating under division 1 or division 2.1 of the Municipal Code from adopting new ordinances or enforcing previously passed ordinances that conflict with the provisions of section 1 of the Act. See *Mandarino v. Village of Lombard* (1980), 92 Ill. App. 3d 78, 79-81, 414 N.E.2d 508; *Hoffman v. Board of Fire & Police Commissioners* (1980), 86 Ill. App. 3d 505, 507, 408 N.E.2d 98; *Illinois Liquor Control Com. v. City of Joliet* (1975), 26 Ill. App. 3d 27, 324 N.E.2d 453.

In our judgment, the circuit court misinterpreted Public Act 84—1018. Accordingly, we reverse the court's order declaring invalid the last paragraph of section 10.3 of the collective-bargaining agreement in effect between the city of Chicago and the Fraternal Order of Police, Lodge No. 7, dissolve the injunction prohibiting defendants from enforcing their mandatory leave-of-absence policy, and remand the cause to the circuit court with directions to dismiss plaintiffs' complaint.

Order reversed; injunction dissolved; cause remanded with directions.

LORENZ and MURRAY, JJ., concur.