JOHN E. BURNELL, Plaintiff-Appellant, v. GENERAL TELEPHONE COMPANY OF ILLINOIS, INC., Defendant-Appellee.

Fourth District   No. 4—88—0526

Opinion filed April 13, 1989.—Rehearing denied May 11, 1989.

534

Law Offices of James P. Baker, of Springfield (James P. Baker, of counsel), for appellant.

David E. Hightower, of Bloomington, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On August 28, 1986, plaintiff John E. Burnell filed suit in the circuit court of Morgan County seeking reemployment and monetary damages resulting from his discharge from the employment of defendant General Telephone Company (GTE). In his complaint, plaintiff alleged, *inter alia*, defendant had discriminated against him in violation of section 621 of the Age Discrimination in Employment Act Amendments of 1978 (Act) (29 U.S.C. §621 *et seq.* (1982)), and his subsequent termination from employment constituted a constructive discharge. The cause was tried before a jury on an amended complaint, and on June 30, 1988, at the close of plaintiff's case, the court allowed defendant's motion for a directed verdict.

On appeal, plaintiff maintains the trial court erred in concluding the evidence received at trial did not raise a sufficient issue that plaintiff was the victim of a constructive discharge to warrant the submission of the case to the jury. We affirm.

■■ A directed verdict is properly entered only in "cases in which all of the evidence, when viewed in its aspect most favorable to the

opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

■ Section 623(a)(1) of the Act provides that it shall be unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." (29 U.S.C.A. §623(a)(1) (West 1985).) To establish a *prima facie* case of discriminatory discharge under the Act, the plaintiff must show (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) his position was filled by a person younger than he. The burden then shifts to the employer to show a legitimate, nondiscriminatory reason for the challenged action. Finally, the plaintiff must rebut the employer's showing by demonstrating that the proffered justification was a pretext, and that plaintiff's age was the determining factor for the challenged action. (*Cockrell v. Boise Cascade Corp.* (10th Cir. 1986), 781 F.2d 173, 177.) Section 626(c)(1) of the Act provides that actions may be brought in Federal court, or, as here, any State court of competent jurisdiction. 29 U.S.C.A. §626(c)(1) (West 1985).

At trial, Walt Winesburg testified for plaintiff as an adverse witness. He indicated (1) he was employed by GTE as "State Director, Human Resources"; (2) in 1984, he was the head personnel officer for the GTE Illinois Company; (3) defendant was a wholly owned subsidiary of the National General Telephone Company; (4) the national company, in 1983 and 1984, began a process of consolidating its operations in order to function with greater economy and efficiency; (5) one of the objectives in this effort was to eliminate unnecessary job positions; (6) in 1984, the Jacksonville, or Western Division, and the Bloomington Division were consolidated; (7) a number of divisions within the company had been consolidated prior to 1984, but no further consolidations took place after 1984; and (8) the position held by plaintiff, service facility manager, had never been eliminated in the consolidation of other divisions and it was considered a position necessary to continue the efficient operation of GTE.

Ronald Harpole then testified for plaintiff as an adverse witness. He indicated (1) prior to 1984, he was employed by GTE as "Division Manager"; (2) at that time, he was plaintiff's immediate supervisor; (3) in 1984, he replaced plaintiff as service facility manager in the Jacksonville Division of the company; (4) at that time, he was 50, two years younger than plaintiff; (5) seven management employees were then 40 years of age or younger, and following consolidation, each of

those individuals was either retained or given a "lateral" assignment to a new position; (6) three management employees, including plaintiff, were then 50 years of age or older; (7) one of those over 50 was released from employment, and plaintiff was given the option of a change in position or retirement; and (8) plaintiff was a "good employee" and received "above average" performance evaluations.

Plaintiff testified at trial that (1) he was born in 1932 and worked for GTE continuously from 1950 through 1984, first as a union "craft" employee, and, beginning in 1961, he held a series of management positions; (2) in 1984, he held the position of "Service Manager of Facilities" in the Jacksonville Division of the company; (3) three individuals held the same position in the Bloomington Division; (4) at that time, plaintiff was both the oldest and had the most seniority of the four incumbent service facility managers; (5) in March 1984, Ronald Harpole informed plaintiff he would be replacing plaintiff; (6) at that time, Harpole told plaintiff that plaintiff would be offered the position entitled "DAC supervisor," at the same salary, or he could elect to retire and receive a continuation of his salary for a certain period of time; (7) plaintiff was aware of the consolidation efforts by the company, and he believed that many of the functions of the DAC supervisor would not exist after consolidation; (8) accordingly, he made several attempts to determine the security of the position from Harpole, Harpole's supervisor, and Wineburg; (9) no one was able to give plaintiff any assurance as to the duration of the position, nor could they assure him he' could later elect the separation pay benefit he was initially offered if the DAC position were eliminated; and (10) as a result, plaintiff elected early retirement.

Here, in regard to the establishment of a *prima facie* case, plaintiff's evidence showed: (1) he was within the protected age group; (2) he was doing satisfactory work; and (3) his position was filled by a person younger than he. In regard to the issue upon which the defendant had the burden of going forward, plaintiff's evidence established, as a legitimate, nondiscriminatory reason for defendant's actions, the nationwide consolidation efforts which involved the elimination of unnecessary job positions. (Although the service facility supervisor position was not unnecessary, the division manager position held by Harpole, plaintiff's supervisor, was eliminated when the two divisions were combined.)

However, as defendant was never actually discharged from his employment, he had the burden to make a *prima facie* showing he was constructively discharged from his employment with defendant and failed to do so. Defendant argued the phrase "constructive dis-

charge" has been interpreted by Federal courts under the Act to require a finding that the defendant deliberately or intentionally made the plaintiff's working conditions so intolerable that a reasonable person, in a similar situation, would be forced to resign his or her employment to escape those intolerable conditions. (See, *e.g.*, *Bartman v. Allis-Chalmers Corp.* (7th Cir. 1986), 799 F.2d 311, *cert. denied* (1987), 479 U.S. 1092, 94 L. Ed. 2d 160, 107 S. Ct. 1304.) Defendant concluded plaintiff did not introduce any evidence that plaintiff had been constructively discharged by defendant.

■ The trial court, in granting defendant's motion for a directed verdict, found the evidence conclusively showed (1) there was no actual discharge since plaintiff was offered a position at a salary approximately equal to that which he had been making; and (2) there was no constructive discharge, because plaintiff's status was not made intolerable by any action on the part of the employer. The court noted plaintiff weighed his options and chose voluntarily to leave the employment and avail himself of the wage continuance plan. The court found that, although plaintiff was concerned about the security of the position, that concern was based on speculation, and such speculation could not be considered in determining whether plaintiff was constructively discharged.

The trial court relied, in part, on the *Bartman* case, cited by both parties. That case, although not factually identical and involving summary judgment rather than directed verdict, was similar enough to be "compelling."

In *Bartman*, plaintiffs were members of a bargaining unit covered by a collective-bargaining agreement. As the expiration date of the agreement neared, some employees became concerned about the status of their eligibility for early retirement during the time period between the expiration of the old agreement and the ratification of the new one. Because of this uncertainty, the plaintiffs elected to retire prior to the expiration of the old agreement but contended their election to retire was forced and they were the victims of constructive discharge. The court said, however, there was no constructive discharge. The court noted it was the employees' uncertainty about the future which prompted them to retire, and nothing was done by the employer to make the conditions so intolerable they were "forced" to do so. The court further noted that decision, while agonizing, was voluntary.

The evidence, when viewed most favorably to the plaintiff, showed there was no evidence of: (1) a decrease in salary (*Cockrell*, 781 F.2d 173); (2) a loss in prestige (*Buckley v. Hospital Corp. of*

*America, Inc.* (11th Cir. 1985), 758 F.2d 1525; (3) a conflict between plaintiff and a new supervisor (*Buckley*, 758 F.2d 1525); or (4) a demotion (*Cazzola v. Codman & Shurtleff, Inc.* (1st Cir. 1984), 751 F.2d 53). In addition, plaintiff was not "rushed" into making a decision, which was a factor in *Bodnar v. Synpol, Inc.* (5th Cir. 1988), 843 F.2d 190. Here, plaintiff was informed of his options in March 1984, and, as late as August 1984, at least, those options were still available to him. In fact, plaintiff did not actually leave his employment with defendant until January 12, 1985. Under the circumstances, there was insufficient evidence for the jury to determine that a reasonable person, in a similar situation, would find the working conditions so intolerable that he would be forced to resign his employment.

Accordingly, for the reasons stated, the decision of the trial court is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.