WALTER W. DUDYCZ, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—89—0318

Opinion filed November 16, 1990.

Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., of Chicago (Joel A. D'Alba and Anne Wells Clark, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Walter Dudycz (plaintiff) appeals the dismissal of his third-amended complaint against the City of Chicago and a number of its officials. We affirm.

Plaintiff, a Chicago police officer, was elected to the Illinois State Senate in November 1984. After his election he maintained his position with the Chicago police department until February 1985, at which time he requested a leave of absence from active duty. He made the request allegedly because he was ordered to do so by his commanding officer since police department policy did not allow him to continue on active duty while serving as a State senator. After complying with this rule, plaintiff allegedly became aware of other employees of the City of Chicago who had been elected to the General Assembly, but who were allowed to maintain their city employment while serving their elected office. Plaintiff then asked to be reinstated to active duty with the police department but was advised by then Superintendent Fred Rice that he would not be allowed to return to active duty until he was no longer serving as a State senator.

On January 27, 1986, plaintiff submitted his resignation to the Chicago police department so that he could take advantage of certain newly enacted legislation which allowed him to transfer his municipal pension credits into the General Assembly Retirement System. Then, on May 22, 1986, plaintiff filed a complaint for injunctive and declaratory relief against the City of Chicago, Mayor Harold Washington, Su-

perintendent Fred Rice, and legislative assistants Cappy Laing and Thomas Coffey, charging that he had been forced to leave his position with the Chicago police department because of his political activity, in violation of Public Act 84—1018 and the Illinois Constitution. Plaintiff amended his complaint on November 12, 1986, and again on May 1, 1987, adding additional claims. The city and other defendants moved to dismiss plaintiff's third-amended complaint as insufficient at law, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), and this motion was granted. Plaintiff's complaint was dismissed with prejudice in an order dated January 18, 1989, and he now brings this appeal.

The issues raised on appeal and properly before this court are: (1) whether the City of Chicago is subject to Public Act 84—1018 and, if so, whether requiring plaintiff to take a leave of absence from his position with the police department upon his election to the General Assembly violates the statute; (2) whether the facts of this case set forth a *prima facie* case for retaliatory discharge; and (3) whether plaintiff's constitutional rights to equal protection and due process of law were violated under the facts presented.

Our consideration of this appeal must begin with a discussion of Public Act 84—1018 and the Illinois Supreme Court case, *Dineen v. City of Chicago* (1988), 125 Ill. 2d 248, 531 N.E.2d 347. In *Dineen* two Chicago police officers and Lodge 7 of the Fraternal Order of Police (the bargaining unit for Chicago police officers below the rank of sergeant) brought an action challenging the Chicago police department rule that its officers take unpaid leaves of absence upon becoming candidates for public office. It was contended that the leave-of-absence policy for police officers running for political office was invalidated by Public Act 84—1018.

As noted in *Dineen,* Public Act 84—1018, which took effect on October 30, 1985, amended article 10, divisions 1 and 2.1, of the Illinois Municipal Code (herein referred to as the Code) (see Ill. Rev. Stat. 1985, ch. 24, pars. 10—1—27.1, 10—2.1—5.1) and the Fire Protection District Act (see Ill. Rev. Stat. 1985, ch. 127½, par. 37.16a) by adding provisions which prohibit the entities governed by those statutes from restricting the political activities of their employees. Public Act 84—1018 also contained a preemption provision declaring that any existing laws or ordinances of home rule units of government "inconsistent with this Act are hereby superseded."

In *Dineen* the theory set forth by the plaintiffs at trial was that the preemption provision of Public Act 84—1018 applied not only to those municipalities covered under article 10, divisions 1 or 2.1, and

the fire protection districts, but to all home rule units and, thus, to the City of Chicago. The appellate court reversed the trial court's finding in favor of the plaintiffs, ruling that Public Act 84—1018 affected only municipalities covered under division 1 or division 2.1 of article 10 of the Code and that the City of Chicago did not operate under these provisions.

In their appeal to the Illinois Supreme Court plaintiffs, in addition to renewing their argument that the public act precluded all home rule units from restricting the political activities of their employees, advanced for the first time the position that the City of Chicago was a municipality covered under article 10, division 1, of the Code. The supreme court sustained the appellate court's decision, affirming the ruling that Public Act 84—1018 applied only to those municipalities covered under division 1 or 2.1 of the Code. However, the court refused to consider whether the City of Chicago was such a municipality, finding that this issue had been waived by the plaintiffs because of their failure to raise it at the trial level or in their petition for leave to appeal to the supreme court.

It is important to note, however, that the court in *Dineen* specifically acknowledged the viability of the issue by its statement:

"Clearly, we have the authority to consider the plaintiffs' new argument. But the resolution of the question is by no means clear, and we decline to consider here an argument that was not presented in the proceedings below and is raised here as an afterthought. We note, however, that our decision in this appeal is made without prejudice to the rights of persons who are not parties to the present action to raise the same argument in a future case, or to the rights of the present plaintiffs to raise the argument in a future case arising from a different cause of action." 125 Ill. 2d at 266.

The plaintiff in the present case raised at trial the issue of whether the City of Chicago, at least with respect to its police department, is covered under division 1 of the Code and, as such, prohibited by Public Act 84—1018 from enforcing any rules or regulations, such as the leave-of-absence policy, that restrict the political activity of its employees. Consequently, this case goes beyond *Dineen* and the trial court erred when it held that *Dineen* was dispositive on the issue of whether a violation of the public act occurred. We, therefore, must now consider whether the City of Chicago is a municipality covered under article 10, division 1, of the Illinois Municipal Code and, if so, whether the leave-of-absence policy involved here violates Public Act 84—1018.

In 1976 the City of Chicago enacted a personnel ordinance, superseding the civil service system set forth in article 10, division 1, of the Illinois Municipal Code. (See Chicago Municipal Code §25.1—1 (1976).) However, two provisions of the Code, section 10—1—18.1 and section 10—1—45, were expressly retained. It is plaintiff's position that the retention of these two provisions signified the City's adoption of article 10, division 1, for the purposes of the its police employees and, therefore, the City must be subject to the prohibitions of section 10—1—27.1 with regard to regulations affecting its police personnel. We disagree.

It has previously been held that the City of Chicago, by enacting a separate personnel ordinance to replace the civil service system set forth in the Illinois Municipal Code, was not a municipality operating under article 10, division 1, of the Illinois Municipal Code. (*Dineen v. City of Chicago* (1987), 152 Ill. App. 3d 90, 93, 504 N.E.2d 144; *Resman v. Personnel Board* (1981), 96 Ill. App. 3d 919, 422 N.E.2d 120.) In addition, the court in *Resman* stated:

"Section 25.1—13 [of the municipal code of Chicago] does not except police officers from the operation of chapter 15.1, and section 25.1—3 makes it clear that *police officers are included within the city's personnel scheme.*" (Emphasis added.) 96 Ill. App. 3d at 922.

■ We concur with the conclusions of these courts and find that the City of Chicago is a home rule unit which does not operate under article 10, division 1, of the Illinois Municipal Code. Article 10, division 1, of the Code is an optional provision. (*Dineen*, 152 Ill. App. 3d at 93; Ill. Rev. Stat. 1985, ch. 24, par. 10—1—43.) By enacting its own personnel code, the City of Chicago clearly exercised its power to remove itself from the operation of division 1.

■ Furthermore, we find no validity to plaintiff's argument that the retention of the two State code provisions somehow exempts police officers from the public employment system established in the municipal code of Chicago or places the Chicago police department under the mandates of article 10, division 1, of the Code. The only significance we attach to the retention of the provisions of the Illinois Municipal Code is the city's intention to maintain review of police board decisions under the Administrative Review Law. Consequently, we find that the City of Chicago is not subject to the prohibitions of section 10—1—27.1 of the State municipal code or the preemption provision of the amendatory act. It follows that the leave of absence complained of here does not violate the statutory provisions of Public Act 84—1018 and, therefore, is not unlawful or wrongful. The trial court's

dismissal of the cause of action was proper.

We now consider whether plaintiff set forth a *prima facie* case for the common-law tort of retaliatory discharge in his third-amended complaint. A valid claim for retaliatory discharge must contain allegations that (1) plaintiff was discharged, (2) the discharge was in retaliation for plaintiff's activities, and (3) the discharge violates a clear mandate of public policy. (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, 519 N.E.2d 909.) In the present case plaintiff does not allege that he was discharged, but that he was "constructively discharged," *i.e.*, that he was compelled to relinquish his position as a police officer because of his political activity.

We note, however, that plaintiff's complaint belies this charge. In paragraph 18 of count II of plaintiff's third-amended complaint it states:

> "On January 27, 1986, Plaintiff resigned from his position in the Department of Police in order to transfer pension credits to the General Assembly Retirement System because he could not receive a normal 20 year pension credit from the Department of Police since the superintendent of police had advised him he would have to resign from his position as State Senator in order to return to the Department of Police. Given the superintendent's position regarding the leave of absence policy, the only way Plaintiff could receive pension credit for his past service as a police officer was to transfer the credits into the General Assembly Retirement System, which required Plaintiff's resignation from the Department of Police."

We conclude from these facts, as did the trial court, that plaintiff was not discharged, but rather, resigned voluntarily from his position with the Chicago police department in order to take advantage of certain benefits made available to him by newly enacted legislation.

We are mindful of plaintiff's assertion that his resignation, although voluntary, was "compelled" by the leave-of-absence policy subscribed to by the police department, which prevented him from maintaining an active duty status with the police department concurrently with his term of office in the Illinois legislature. Plaintiff suggests that these conditions sufficiently allege a "constructive discharge," which meets the requirements of discharge for the tort of retaliatory discharge. Plaintiff's claim must fail for two reasons. First, the concept of constructive discharge has been rejected in the context of retaliatory discharge cases, having been found to be outside the narrow parameters of that cause of action. (*Scheller v. Health Care Service*

*Corp.* (1985), 138 Ill. App. 3d 219, 223-25, 485 N.E.2d 26.) Secondly, even if the concept of constructive discharge were recognized in Illinois within the context of a common-law tort of retaliatory discharge, plaintiff failed to set forth facts to establish a constructive discharge.

In other causes of action where the concept of constructive discharge has been recognized (*e.g.*, employment discrimination cases brought under State or Federal statutes), it has been construed as requiring a showing that the employer deliberately or intentionally made the employee's working conditions so intolerable that a reasonable person would have felt compelled to resign to escape the intolerable conditions. (See *Burnell v. General Telephone Co. of Illinois, Inc.* (1989), 181 Ill. App. 3d 533, 537, 536 N.E.2d 1387; *Steele v. Human Rights Comm'n* (1987), 160 Ill. App. 3d 577, 581, 513 N.E.2d 1177.) In the present case plaintiff did not set forth any facts to indicate an intolerable working condition. While plaintiff's decision to resign may have been motivated, wholly or in part, by the leave-of-absence policy practiced by the police department, there is no basis for finding that this regulation is unlawful or in any sense wrongful. Therefore, at best plaintiff showed that he made a reasoned decision to relinquish his position with the police department after weighing all his options. This does not establish a constructive discharge. See the *Burnell* and *Steele* cases cited above.

Plaintiff next argues that his right to equal protection under the State and Federal Constitutions was violated, and as support for his claim he names a number of legislators who have apparently continued their city employment while serving their terms of office. However, we find these facts wholly insufficient to set forth a claim that plaintiff's right to equal protection of the law has been denied.

■ " 'The Due Process Clause *** is not a guarantee against incorrect or ill-advised personnel decisions' *** [and even] '[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' " (*Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 291-92, 456 N.E.2d 27, 34, quoting *Bishop v. Wood* (1976), 426 U.S. 341, 350, 48 L. Ed. 2d 684, 693, 96 S. Ct. 2074, 2080, and *Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.) In the present case plaintiff's third-amended complaint only charged that certain other legislators were allowed to maintain their city employment while serving in their elected office, although he was denied this opportunity. Plaintiff does not establish that he and these other legis-

lators were, in fact, similarly situated so that he was entitled to be treated in the same manner. More importantly, the complaint contains no allegation of purposeful discrimination, *i.e.*, the preferential and arbitrary denial of a right, benefit, or privilege to a person or class of persons without a reasonable basis. (See *Wilson v. All-Steel, Inc.* (1981), 87 Ill. 2d 28, 428 N.E.2d 489.) For example, plaintiff does not allege that only Republicans were denied the right to serve in the legislature and continue in their city employment or other such invidious bias. Consequently, we find no basis for plaintiff's equal protection claim.

█ Nor do we find that plaintiff's due process rights were violated. It is true that a police officer, as a public employee, has a property right in his or her own continued employment that cannot be taken away without due process of law, *i.e.*, upon written charges and after an opportunity to be heard. (See *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487; Chicago Municipal Code, §11—3 (1982).) However, as stated earlier, the facts alleged do not disclose that plaintiff was discharged or denied continued employment in the police department. Rather, he voluntarily resigned. Furthermore, the fact that plaintiff's resignation may have been motivated by the leave-of-absence policy is of no consequence since the policy is not wrongful.

In summary, the allegations in plaintiff's third-amended complaint failed to state a cause of action against the city or any of its defendant-officials and so we affirm the trial court's dismissal of the complaint as to all the defendants.

Affirmed.

COCCIA, P.J., and GORDON, J., concur.