KAREN VEACH, Plaintiff-Appellant, v. ALFRED L. CROSS, JR., *et al.*, Defendants (The City of Mattoon *et al.*, Defendants-Appellees).

Fourth District  No. 4—88—0323

Opinion filed December 30, 1988.

Robert I. Auler, of Auler Law Offices, P.C., of Urbana, for appellant.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On September 25, 1981, plaintiff Karen Veach filed a complaint in the circuit court of Cook County against various defendants including the City of Mattoon (City) and its chief of police, Raymond Senteney (chief). The case was transferred to the circuit court of Coles County where, on December 7, 1982, an 11-count amended complaint was filed. On this appeal we are only concerned with count VII, which is against both the City and the chief in his representative capacity, count IX, against the chief in his representative capacity, and count X, against the City. A jury trial was held as to those counts and judgments were entered (1) on January 27, 1988, on verdicts directed in favor of defendants as to counts IX and X; and (2) on a verdict without direction in favor of defendants as to count VII. Final judgments have been entered as to other counts. Plaintiff has appealed the judgments as to counts VII, IX, and X. We affirm.

This suit arises from an occurrence in and near Mattoon in Coles County. On September 28, 1979, plaintiff left the parking lot of the Mattoon Holiday Inn in a vehicle driven by a friend, Alfred Cross, Jr. They were chased by a Mattoon police squad car driven by Officer Joe Plummer and later by another Mattoon officer in another squad car. During the chase, the vehicle in which plaintiff was a passenger crashed into a ditch, causing the injury to plaintiff.

Count VII alleged the City and the chief were guilty of negligence

which was a proximate cause of plaintiff's injuries in that each (1) "[c]arelessly and negligently failed to timely, properly, and adequately identify himself as a peace officer"; (2) drove at a dangerous rate of speed; (3) negligently used force in trying to stop the vehicle; and (4) used unsafe methods in making the chase. The conduct alleged apparently is intended to refer to that of Officer Plummer, who was an employee of the City. Counts IX and X were brought pursuant to Federal civil rights legislation (42 U.S.C. §1983 (1982)) and alleged violations of plaintiff's fourteenth amendment rights. Count IX alleged the chief, operating under color of State law, recklessly and wantonly engaged in the conduct described in count VII. Count X alleged the conduct previously described as a proximate cause of plaintiff's injury resulted from the City's failure to establish adequate rules and regulations and provide adequate training for and supervision of its officers.

Plaintiff's most serious contention on appeal is that the circuit court erred in refusing to admit into evidence an evidence deposition of Robert DiGrazia concerning his expert opinion as to accepted standards of care to be exercised by police officers in chasing and taking criminals into custody. She also contends the court erred in (1) directing verdicts as to counts IX and X; (2) ruling on motions *in limine*; (3) removing a juror during the course of trial; and (4) permitting the introduction of (a) documentary evidence concerning the bad character of Cross, and (b) a police report. Plaintiff maintains the errors were so gross that their cumulative effect denied her due process. The issues concerning the refusal to admit the evidence deposition and the direction of verdicts involve intricate legal questions, but, as we will explain, the other questions raised do not concern serious matters. Any error which could have occurred falls far short of depriving plaintiff of due process.

Discussion of the evidence at trial concerning the occurrence is a necessary preface to an understanding of the issues raised. Most of the testimonial evidence in that regard came from plaintiff and Plummer. They differed sharply. According to plaintiff, she drove to the Holiday Inn to get Cross. As he came through the parking lot towards the vehicle, an officer in a police car pulled beside her and spoke to her, and, as Cross walked in front of the police car, the officer spoke to him but did not attempt to restrain him. She said Cross then entered her car on the driver's side, and she moved to the passenger side. According to Plummer's testimony, he drove by that car and saw Cross and an unidentified person in the vehicle.

Plaintiff testified that Cross drove from the lot into a subdivision,

driving in excess of the speed limit, but she saw no police cars following. She stated Cross drove south on a rural road called Odd Fellows Road, whereupon she heard a noise like a firecracker, and Cross accelerated the vehicle's speed to 80 to 85 miles per hour. She testified she then heard repeated bangs like gunfire, and their vehicle then skidded into the ditch. According to plaintiff, pursuing officers then approached with guns drawn, one of whom ordered her to search Cross to see if Cross had a gun. She said another officer then put a gun to her head and told her she should obey the other officer.

Plummer testified that, prior to seeing Cross in the parking lot, he had information Cross was wanted on felony warrants. Plummer said that upon seeing Cross he turned his vehicle around while radioing to headquarters for confirmation as to the warrants. Plummer said that, when the department confirmed the existence of the warrants, he drove after Cross, attempting to catch up with him. According to Plummer, he lost sight of the Cross vehicle momentarily but then saw the car at a stoplight with its lights out. Plummer stated he then activated his red lights and siren and pulled beside Cross, who had driven into a subdivision, whereupon Cross sped off through the subdivision onto a rural road driving at a speed in excess of 90 miles per hour. Plummer testified he followed the Cross car but at a slower speed and eventually came to a "T" intersection where the Cross car had been driven into a ditch. Plummer admitted he had drawn his gun at that point but said he did so because he knew Cross had carried weapons in the past and thought he might be armed.

Other law enforcement officers presented some testimony concerning the episode of the chase. Mattoon police officer Cain stated he was on patrol in the area of the chase and, when he heard Plummer's transmission about his pursuit, he activated his lights and siren and attempted to catch up with Plummer. Cain testified he was able to follow the vehicles driven by Cross and Plummer after they entered the subdivision and until the crash. He said he fired no shots and heard none coming from Plummer's vehicle. Coles County deputy sheriffs Arthur Beier and Mark Petrus testified they also heard Plummer's transmission and arrived at the scene after the crash. Both stated they drew their weapons until assured they no longer needed that protection.

▮ We consider first the ruling in regard to admission of the DiGrazia evidence deposition. His testimony indicated he was a consultant in criminal justice with considerable experience, expertise and prestige in regard to such matters. The substance of the opinion to which he testified was that, assuming the correctness of plaintiff's

testimony, the conduct of the police officers of the City in (1) not arresting Cross at the scene; (2) then engaging in a high speed chase of the Cross vehicle; and (3) firing shots did not meet accepted standards of police work. The record does not contain a transcript of the pretrial proceedings during which the trial court initially ruled on the defendants' original motion to preclude admission of the deposition. However, the record does contain a brief dialogue between court and counsel when the matter was brought up again on the first day of trial before the impanelling of the jury commenced.

The brief discussion concerning the admissibility of the deposition indicates the reason for the court's ruling excluding the deposition was because, even under the statement of the plaintiff as to the evidence most favorable to her, no showing would be made that the Mattoon officers were under a duty to plaintiff to proceed with reasonable care in regard to the conduct alleged. We do not know what representations were made to the court as a foundation for the evidence but, based upon the evidence presented, we conclude the court ruled properly.

Defendants maintain the evidence deposition was not properly and timely made a part of the record. In view of our decision that, in any event, the court properly excluded the deposition, we need not decide that procedural question. We also note that, for reasons we will explain, the evidence deposition would not cure the defect in the evidence as to counts IX and X. Accordingly, the ruling is significant only as to count VII. The lack of showing of a duty on the part of the police officers also bears upon whether a verdict should also have been directed in favor of defendants as to count VII, but that issue is not before us.

■ In examining the question of duty, we first examine relevant legislation. Section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) states:

"Neither a local public entity nor a public employee is liable *** for failure to provide adequate police protection or service *** and failure to identify or apprehend criminals." (Ill. Rev. Stat. 1985, ch. 85, par. 4—102.)

Section 4—107 of the Act also states:

"Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." (Ill. Rev. Stat. 1985, ch. 85, par. 4—107.)

Exceptions to the foregoing immunity have been held to arise only under special circumstances or when the conduct of officers involved

is purely ministerial and involves no discretion.

In *Mallder v. Rasmussen* (1986), 145 Ill. App. 3d 809, 495 N.E.2d 1356, the Appellate Court for the Third District held a complaint against a law enforcement officer failed to state a cause of action. It alleged the officer, while at a private party, saw a person whom he knew to be an alcoholic with a prior record of driving under the influence and for whom an arrest warrant was outstanding. The complaint further alleged the law enforcement officer refrained from arresting the alcoholic upon the latter's promise to report later to the sheriff, and six hours later the alcoholic, while intoxicated, drove a vehicle into another vehicle, killing the plaintiff's decedent. The court concluded the law enforcement officer and, accordingly, the municipality which employed him, had no special relationship to the decedent to protect the decedent from the danger presented by the alcoholic. The court described the special circumstances which create an exception to sections 4—102 and 4—107 of the Act and give rise to a duty of care in these words:

> "(1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or willful in nature; and (4) *the injury must occur while the plaintiff is under the direct and immediate control of the municipality.*" (Emphasis added.) *Mallder*, 145 Ill. App. 3d at 811, 495 N.E.2d at 1358.

See also *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214.

Recent decisions of this court have been consistent with *Mallder*. In *Fessler v. R.E.J., Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515, the trial court dismissed a complaint which charged a police officer with negligence in allowing a person stopped after a citizen had complained of his erratic driving to stay with his truck. The complaint further alleged the truck later crashed into another, killing the plaintiff's decedent. In the case of *Vasconcelles v. City of Springfield* (1988), 170 Ill. App. 3d 404, 524 N.E.2d 720, the alleged failure of a city police department to investigate threats was held not to constitute a cause of action in favor of the personal representative of the recipient of the threats who was subsequently killed by the person making the threats. Most analogous to the instant case is that of *Huddleston v. City of Charleston* (1986), 144 Ill. App. 3d 1077, 495 N.E.2d 82. There, officers who learned of a motorcycle traveling at a speed in excess of 100 miles per hour set up a roadblock just past a

curve in the expected direction of the cyclist. The cyclist crashed into the roadblock, killing the plaintiff's decedent, who was a passenger on the cycle. A judgment on a directed verdict for the defendant city and its officers was affirmed.

In each of the cited cases, the injured party was not in the control of the agents of the municipality. The situation differs from that in *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423, and *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, cited by plaintiff, where the municipality had retained some control over the persons injured. In *Brooks*, police officers had directed the plaintiff's decedent to park his car in a possibly unsafe place near a roadblock. The vehicle for which the roadblock was set came through, hit the decedent's vehicle and killed the decedent. In *Gardner*, the plaintiff had been taken by municipal police officers to the scene of an arrest to attempt identification of the arrestee when injured.

■ Plaintiff seeks to distinguish the cases relied upon by the defendant from that here because, here, the conduct attributed to Plummer by plaintiff in engaging in a high speed chase and firing shots at the Cross vehicle were acts of commission rather than omission. We do not consider the difference to be sufficient to impose a duty in cases where the allegedly wrongful conduct consists of one or more affirmative acts. The quoted rule from *Mallder* speaks in terms of "specific *acts or omissions*." (Emphasis added.) (*Mallder*, 145 Ill. App. 3d at 811, 495 N.E.2d at 1358.) Moreover, any limitation upon police immunity which covers only passive conduct fails to give them the discretion they need in performing their difficult and often dangerous tasks.

Notably, here, the most significant affirmative act involved was the pursuit of the Cross vehicle which contained a passenger. While some evidence was presented that one or two shots were fired, no evidence was presented that any shot hit the vehicle or its occupants. Thus, the only significance of the alleged shooting was that it may have spurred the fleeing driver to drive even faster. To expose municipalities to liability for any negligence in engaging in a chase of a fleeing criminal if the fleeing criminal injures someone in the chase would cut at the heart of sections 4—102 and 4—107 of the Act. Ill. Rev. Stat. 1985, ch. 85, pars. 4—102, 4—107.

■ Plaintiff's theory in both counts IX and X upon which verdicts were directed for defendants was that the City and the chief, in his representative capacity, were liable under Federal civil rights legislation (42 U.S.C. §1983 (1982)) for failure to adopt policies which, if

followed, would have caused Plummer to proceed differently in regard to taking Cross into custody. As stated in *Monell v. Department of Social Services of the City of New York* (1978), 436 U.S. 658, 694, 56 L. Ed. 2d 611, 638, 98 S. Ct. 2018, 2037-38, cited by defendants, a municipality generally has no vicarious liability under the foregoing legislation but can be held liable thereunder for conduct of its agents and servants if committed in conformity with an official policy which is violative of the constitutional rights of the party injured. Here, neither the evidence presented nor that offered and refused set forth any official policy in regard to how officers were to proceed under circumstances shown here. Plaintiff maintains that the lack of any policy was, in itself, a policy permitting gross wrongs to be perpetrated upon persons who might be injured when police officers are apprehending a suspect.

Plaintiff cites no authority in support of her theory that lack of policy is a policy. We do not ascribe to that theory. Clearly, the affirmative act of requiring officers to perform in an improper manner is more wrongful than not giving them guidelines which would attempt to keep them from improper conduct. If we compare the burden placed upon local law enforcement departments by the *Monell* standard and that resulting from the standard suggested by plaintiff, we reach a similar conclusion. The difficulty of enacting regulations or adopting policy which prevents officers from engaging in conduct denying a person's constitutional rights is much more difficult than refraining from enacting regulations or adopting policy which authorizes or requires such conduct. We see no indication in the decisions of higher courts binding upon this court that the Federal legislation upon which counts IX and X are based was intended to intrude into the operation of local law enforcement agencies to the extent plaintiff suggests. The court properly directed verdicts in favor of defendants as to counts IX and X.

■ During the course of trial, the court removed one of the 12 jurors selected to hear the case, and the case proceeded to a verdict by 11 jurors. The parties agree they had stipulated to a verdict by 11 jurors if one was discharged. We need not detail the circumstances causing the court to make this ruling because plaintiff waived any possible error by failing to move for a mistrial when the juror was removed. See *Hartgraves v. Don Cartage Co.* (1976), 63 Ill. 2d 425, 348 N.E.2d 457.

■ No error resulted from the court's ruling on other *in limine* motions. The court denied plaintiff's *in limine* request to prohibit defendants from putting before the jury by any means any theory the

officers were privileged to fire warning shots at a vehicle being pursued by them. No evidence in this regard was introduced, and no argument in this regard was made. The defense argued the officers acted reasonably in chasing Cross and drawing weapons upon reaching the scene of the crash, but that argument would not have been violative of any order which would have been responsive to plaintiff's request. The court allowed defendants' *in limine* motion to prohibit plaintiff from suggesting to the jury that Plummer's failure to arrest Cross in the parking lot subjected defendants to liability. Plaintiff recognizes the mere failure to do so would not give plaintiff a cause of action but contends the failure to arrest, if negligent, would have been part of a chain of negligence including later affirmative actions which together violated a duty to plaintiff. We do not agree that the failure to arrest could be considered as a contributing negligent factor to any liability which would arise from later acts in the chase even if those acts were such as to give rise to liability.

Defendants were permitted to introduce into evidence certain exhibits which contained a large amount of mostly cumulative evidence designed to show the bad character of Cross, thus justifying the action of the police officers. Plaintiff objected on grounds that (1) the prejudice from the evidence exceeded its probative value; and (2) defendants had been tardy in giving plaintiffs discovery of some of the information contained in the exhibits. As the evidence concerned Cross, who was admittedly a person of ill repute, and not plaintiff, and, because of its cumulative nature, we readily conclude no reversible error resulted from the admission of the evidence.

On July 31, 1987, plaintiff had filed a second supplementary request for production of information which included that upon which defendants later sought to justify the pursuit and arrest of Cross. Some of the information in these exhibits was not furnished to plaintiff until the trial began on January 19, 1988. Defendants attempted to justify the delay by maintaining they did not decide to obtain the corroborative information involved until just prior to trial. The trial court concluded that defendants had made "substantial compliance" with requested discovery. Because of our previously stated determination that any possible error involved was not reversible, we choose not to discuss the discovery issue in further depth.

Similarly, no reversible error occurred when, over plaintiff's hearsay objection, the court permitted defendants to introduce into evidence a police report. The evidence was admitted because plaintiff's cross-examination of the chief intimated the report had not been made until long after the occurrence. How jurors could determine when the

report was made from examining the document is not readily apparent but prejudice to plaintiff resulting from admission of the report was minimal. The report contained hearsay which corroborated the testimony of the defendants' witnesses.

As we have indicated, we affirm.

Affirmed.

KNECHT and SPITZ, JJ., concur.