ESTATE OF RALPH STROCCHIA, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—94—2439

Opinion filed November 1, 1996.

J. Peter Dowd and Anne L. Hunter, both of Dowd & Bloch, of Chicago, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE HOURIHANE delivered the opinion of the court:

This appeal arises out of a civil rights action filed by Ralph Strocchia (Strocchia), a career service officer with the Chicago police department, against the City of Chicago, pursuant to the provisions of 42 U.S.C. § 1983 (1988).[1] Strocchia claimed that the department's handling of his request for reinstatement to the police force following an approved leave of absence resulted in violations of his procedural and substantive due process rights. Strocchia appeals from the judgment of the circuit court entered upon a jury verdict in favor of the city.

On appeal, Strocchia asserts that the trial court erred by improperly instructing the jury; dismissing his state constitutional claims; denying his motions to amend the pleadings and for equitable relief; ruling incorrectly on certain evidentiary matters; and denying his motion for sanctions.

For the reasons that follow, we affirm the judgment of the trial court in favor of the city.

## BACKGROUND

In 1981, plaintiff was a Chicago police officer assigned to the traffic division, scofflaw unit. Having served on the force for 29 years, he was classified as a "career service" employee of the city. On January

---

[1]This court granted leave to substitute the estate of Ralph Strocchia as appellant in this appeal.

1, 1982, the scofflaw unit became a part of the city's law department. Plaintiff, along with several other police officers, took approved leaves of absence from the police department for calendar year 1982 and continued to work in the scofflaw unit under the auspices of the city's law department. Additional leaves of absence were granted for 1983 and 1984 for this purpose.

Plaintiff testified that at the time his initial leave of absence was granted, Hugh Conwell, who organized and headed up the scofflaw unit within the law department, advised him that he could return to the police department at the end of any approved leave, without loss in salary or seniority. Plaintiff was assured that the only difference between working for the law department and the police department was the payroll. As part of the transfer to the law department, arrangements were made with the Policemen's Annuity and Benefit Fund of Chicago so that plaintiff could make his pension contributions to the fund by personal check, rather than by payroll deductions. This preserved his continued service credit with the police department pension fund.

In 1984, the law department was reorganized and the position plaintiff occupied in the scofflaw unit was no longer treated or paid the same as a police officer. Thus, plaintiff and other officers similarly situated applied for reinstatement to their career service positions in the police department. In connection with plaintiff's reinstatement, on December 17, 1984, he reported for a medical examination to determine fitness for duty. The exam could not go forward because plaintiff ate breakfast that morning. Budgetary problems in the police department delayed rescheduling of the exam until January 22, 1985. For the most part, the other officers who sought reinstatement successfully completed their physicals and were returned to the force on or about January 1, 1985.

Following plaintiff's physical on January 22, Dr. Paul Mesnick, the police department's chief surgeon, advised plaintiff that a cardiac stress test was needed to complete the exam. The stress test was ordered in response to plaintiff's disclosure on a medical questionnaire that while on leave he had undergone brain surgery following a small stroke. Also while on leave, he was diagnosed as a diabetic. By the end of February 1985, plaintiff completed all required tests, but Dr. Mesnick wished to review the medical records from plaintiff's brain surgery.

Apparently frustrated by the delay in his reinstatement, in June or July 1985, plaintiff contacted former Superintendent of Police Richard Brzeczek for assistance. Brzeczek, an attorney in private practice, contacted former associates in the department concerning

the status of plaintiff's reinstatement. Shortly thereafter, and prompted by a telephone call from an aide to then Deputy Superintendent of Police Dennis Nowicki, plaintiff finally signed the release for medical records on July 11, 1985. The records were received by the department August 8, 1985, and three weeks later the department began taking formal steps to reinstate plaintiff at full seniority.

In an August 28, 1995, letter to Nowicki, Brzeczek requested that plaintiff be reinstated and demanded back pay to January 1, 1985. Around the same time, plaintiff was advised by John Sheerin, assistant director of personnel, that he could return to the force on September 16, 1985, but this date conflicted with a European vacation plaintiff already had scheduled. Rather than delay his reinstatement, plaintiff requested that he be put on furlough beginning September 16. Commanding officers are allowed to decide such requests, but until plaintiff returned to work and received a duty assignment, he would have no commanding officer. Thus, during a conversation between plaintiff and Sheerin it was agreed that plaintiff would return one month later, on October 16. According to plaintiff, Sheerin could not say what plaintiff's pay or seniority would be upon his return. Although plaintiff had earlier been advised by personnel that payroll information could be obtained through the finance division, plaintiff never contacted this office. On September 5, 1985, unbeknownst to plaintiff, the department approved plaintiff's reinstatement at full seniority and at the highest pay rate.

On September 4, 1985, Nowicki responded in writing to Brzeczek's August 28 letter. Nowicki attributed the delay in reinstatement to plaintiff's own conduct and the need to resolve some serious medical issues. Nowicki acknowledged that the September 16 start date conflicted with plaintiff's vacation, but did not mention the new start date of October 16. Rather, Nowicki stated that plaintiff should notify the department in writing upon his return of his future availability, which was never done.

Upon return from vacation, plaintiff first contacted Brzeczek who, according to plaintiff, advised him that the department was only offering reinstatement as a new hire. Brzeczek purportedly received this information from Nowicki. Plaintiff subsequently advised Sheerin that he was ready to return to work on October 16. Once again, Sheerin could not tell him what pay or seniority had been approved. Without first advising anyone in the department, plaintiff decided not to report for duty on October 16. Having failed to appear for work as scheduled, Rita Zimmerman in personnel checked with the law department and learned that plaintiff was still working there. Zimmerman did not speak directly with plaintiff. She

advised payroll that plaintiff's return to duty was cancelled and that there was no corrected date for his return. Had plaintiff remained on both payrolls, his check from the law department would have been automatically cancelled.

On November 7, 1985, the department's approval of plaintiff's reinstatement was extended 60 days to early January 1986. Plaintiff was not notified of this action and at no time did he report for duty. Rather, plaintiff continued to take successive extensions of his leave of absence so that he could continue working in the law department. The last such extension was through 1986.

On January 10, 1986, plaintiff filed a petition for declaratory judgment in the chancery court seeking a ruling that he was entitled to reinstatement at his full salary and seniority, as well as back pay to January 1, 1985. Shortly thereafter, plaintiff resigned from the department, effective February 16, 1986. He noted on the departmental form that he was "[r]etiring due to circumstances beyond [his] control."

Four months after his resignation/retirement, plaintiff amended his complaint in the chancery court, this time alleging a violation of his equal protection and due process rights, as well as a breach of his employment contract by the department for its failure to reinstate him and to pay him for accumulated overtime. He sought money damages only. His amended complaint was dismissed for want of prosecution on April 28, 1987.

One year later, he filed a complaint in the law division alleging that plaintiff had been singled out for additional medical testing and that the department had refused to reinstate him on the same terms as the other officers who had gone over to the law department. He asserted violations of his right to equal protection of the laws, violations of his due process rights, and breach of his employment contract. Plaintiff sought money damages only.

In October 1993, trial proceeded on his second amended complaint, which alleged in count I a violation of his procedural due process rights, and in count II a violation of his substantive due process rights. Plaintiff sought reinstatement and money damages. The jury returned a verdict in favor of the city and plaintiff's post-trial motions for judgment notwithstanding the verdict or a new trial were denied. The trial court also denied plaintiff's motion for sanctions based upon the city's purported failure to investigate the facts of the case or to disclose known facts. This appeal followed. 155 Ill. 2d R. 301.

## ANALYSIS

### I

We first consider whether the trial court erred by dismissing count III of plaintiff's second amended complaint. On the eve of trial, plaintiff was granted leave to file a second amended complaint adding a new count III for retaliatory discharge. However, as filed by plaintiff, count III contained allegations not only of retaliatory discharge, but state constitutional claims as well. The trial court granted the city's motion to dismiss brought under section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1994)), finding that the retaliatory discharge claim was actually premised on the constructive discharge of plaintiff, which could not support a retaliatory discharge claim. The trial court also struck all allegations in count III relating to state constitutional claims based on surprise and lack of notice to defendant, but left open the issue of whether plaintiff's complaint could subsequently be amended to include such claims.

■ On review of a motion to dismiss pursuant to section 2—615 of the Code, this court must consider whether, when viewed in a light most favorable to plaintiff, the facts alleged in the complaint adequately set forth a cause of action upon which relief may be granted. The issue is one of law and review is *de novo*. *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 268, 563 N.E.2d 915 (1995).

Count III of plaintiff's second amended complaint contains allegations that plaintiff involuntarily resigned from the department in response to the city's continuous and wrongful position that he could not return except as a new hire. Plaintiff alleged that the city's refusal to reinstate him prior to filing suit was done either negligently or in retaliation for his refusal to waive back pay, and that the city's continued refusal to reinstate him was in retaliation for the filing of his lawsuit. Finally, plaintiff alleges that the city's conduct constitutes a discharge of plaintiff in contravention of the public policy of the state. Such facts, even if true, would not entitle plaintiff to relief based on a theory of retaliatory discharge.

■ To succeed on a claim for retaliatory discharge, an employee must plead and ultimately prove (1) that he was discharged; (2) that the discharge was in retaliation for his activities; and (3) that the discharge violates a clear mandate of public policy. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160 (1992). Mere assertions by a plaintiff that he was "compelled" to resign are insufficient and Illinois courts have thus consistently declined to extend the tort of retaliatory discharge to encompass the concept of constructive discharge. *Hartlein,*

151 Ill. 2d at 163; *Dudycz v. City of Chicago*, 206 Ill. App. 3d 128, 133, 563 N.E.2d 1122 (1990); *Grey v. First National Bank*, 169 Ill. App. 3d 936, 940-43, 523 N.E.2d 1138 (1988); *Scheller v. Health Care Service Corp.*, 138 Ill. App. 3d 219, 223-25, 485 N.E.2d 26 (1985). *Cf. Hinthorn v. Roland's of Bloomington, Inc.*, 151 Ill. App. 3d 1006, 503 N.E.2d 1128 (1987) (involuntary resignation under threat of discharge satisfies discharge requirement for retaliatory discharge claim).

■ Plaintiff here asserts that he was compelled to resign in response to the city's conduct relative to his reinstatement. Nowhere is it alleged that the city terminated plaintiff's employment. In fact, plaintiff admits that the city approved him for reinstatement with credit for 32 years of service. Moreover, in paragraph 49 of plaintiff's count I, which is incorporated by reference into count III, plaintiff states:

> "The refusal of defendants *** to reinstate Strocchia after October 1985 unless he waived his rights to backpay and seniority constituted a termination or *constructive discharge* of Strocchia from his Career Service position with the CPD." (Emphasis added.)

Thus, although plaintiff argues to the contrary, plaintiff's retaliatory discharge claim is clearly premised upon a theory of constructive discharge. However, allegations of constructive discharge will not support a cause of action for retaliatory discharge. *Hartlein*, 151 Ill. 2d at 163. Accordingly, the trial court properly dismissed that part of count III relating to a claim for retaliatory discharge.

■ We also find no error in the trial court's dismissal of plaintiff's state constitutional claims embodied in count III. Although amendment of pleadings should be liberally allowed to permit the parties to fully present their causes (*State Farm Fire & Casualty Co. v. M. Walter Roofing Co.*, 271 Ill. App. 3d 42, 49, 648 N.E.2d 254 (1995)), there is no absolute right to amend pleadings. *Weber v. Cueto*, 253 Ill. App. 3d 509, 523, 637 N.E.2d 1103 (1994). Rather, the decision to allow amendment lies within the sound discretion of the trial court and will not be reversed on review absent an abuse of discretion. *In re Estate of Hoover*, 155 Ill. 2d 402, 416 (1993). Factors to be considered in whether the trial court abused its discretion by allowing or denying the amendment are:

> "(1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the movant had previous opportunities to amend." *Hoover*, 155 Ill. 2d at 416.

Here, in light of the plaintiff's request to amend only to add a count for retaliatory discharge, and the court's order limiting amend-

ment to that sole issue, the trial court struck plaintiff's state constitutional claims based on surprise to the defendant. Because we find that the plaintiff had prior opportunities to amend and that defendant would be prejudiced by allowance of such an amendment on the eve of trial, we affirm the trial court's dismissal.

Plaintiff claims that his amendment was based on evidence not disclosed until just before trial which established that, at the time plaintiff's original suit was filed in January 1986, city officials had already approved his return at full pay and seniority. Such information, however, is not a necessary predicate to plaintiff's state constitutional claims, which appear to be loosely based on a violation by the city of its purported obligation to provide plaintiff with a remedy for unreasonably delaying his reinstatement beyond January 1, 1985. Plaintiff cites to sections 2, 5 and 12 of article I of the Illinois Constitution, titled "Due Process and Equal Protection," "Right to Assemble and Petition," and "Right to Remedy and Justice," respectively. Ill. Const. 1970, art. I, §§ 2, 5, 12. Without regard to whether the allegations in count III adequately state a cause of action for deprivation of plaintiff's constitutional rights, plainly, such a theory of recovery could have been advanced much sooner by plaintiff. The delay in plaintiff's reinstatement occasioned by the city's purported conduct has been the gravamen of plaintiff's case since the inception of this litigation and plaintiff offers no reasonable excuse for his failure to amend earlier.

Further, count III appears to suggest a violation of plaintiff's constitutional rights based on the city's very handling of this litigation over a period spanning more than seven years. We note that this is also the subject of plaintiff's motion for sanctions. Defense of this eleventh-hour claim would have prejudiced the city by materially changing the proofs required at trial, which had theretofore focused on the events giving rise to plaintiff's leave of absence from the police department and the department's subsequent handling of his request for reinstatement. See *State Farm Fire & Casualty Co.*, 271 Ill. App. 3d at 49-50. Based on the foregoing, we cannot say that the trial court abused its discretion by not allowing amendment of plaintiff's complaint to include state constitutional claims.

We also find no error in the trial court's denial of plaintiff's motion to amend the pleadings to conform to the proofs. At the close of all the evidence, plaintiff moved, pursuant to section 2—616 of the Code (735 ILCS 5/2—616 (West 1994)), to amend his complaint by adding state claims for (1) violations of the city's "rules, ordinances and promises" in denying plaintiff reinstatement in 1985; and (2) violations of the state constitutional guarantees of due process and

the right to prompt remedy and justice by contesting plaintiff's rights throughout eight years of litigation.

■ It is axiomatic that the evidence presented at trial must support the amended pleading. See *Pry v. Alton & Southern Ry. Co.*, 233 Ill. App. 3d 197, 214, 598 N.E.2d 484 (1992). Plaintiff, however, points to no evidence that city officials denied plaintiff reinstatement in contravention of city rules, and a review of the record discloses no such evidence. Further, contrary to Supreme Court Rule 341 (155 Ill. 2d R. 341(e)(7)), plaintiff fails to cite any legal authority in support of his contention that the city's knowledge that it had approved plaintiff for reinstatement, coupled with its vigorous defense of plaintiff's various complaints, somehow constitutes a violation of plaintiff's state constitutional rights. Thus, this matter is waived on appeal. *Pyskaty v. Oyama*, 266 Ill. App. 3d 801, 822, 641 N.E.2d 552 (1994).

■ Plaintiff further sought additional equitable relief barring the city from asserting that the actions of city officials who failed to reinstate plaintiff in 1985 were random and unauthorized actions for which the city would not be liable if adequate procedures were available for review. Plaintiff also sought an order estopping the city from arguing that plaintiff could have obtained relief by petitioning for a writ of mandamus or declaratory judgment. Plaintiff argues that the denial of such requests led to the adoption of improper jury instructions and to improper closing argument by the city. However, we need not consider these issues since we find, as discussed in section II *infra*, that the city was entitled to judgment as a matter of law.

## II

■ Plaintiff argues that the trial court erred in giving jury instructions that contained incorrect and conflicting statements of the law. Even if true, a new trial is not warranted since we find that defendant was entitled to judgment as a matter of law. See *Grass v. Hill*, 94 Ill. App. 3d 709, 718, 418 N.E.2d 1133 (1981); *Folk v. National Ben Franklin Insurance Co.*, 45 Ill. App. 3d 595, 599, 359 N.E.2d 1056 (1976). "If the decision of the trial court is correct under the circumstances of the case, it will not be reversed on appeal for the reason that an incorrect means was used to arrive at the decision, and this is particularly true where reversal and retrial would only result in the same decision." *In re Marriage of Benefield*, 131 Ill. App. 3d 648, 650, 476 N.E.2d 7 (1985).

We note, too, that a reviewing court may sustain the decision of the trial court on any ground supported by the record. *Landmarks Preservation Council v. City of Chicago*, 125 Ill. 2d 164, 174 (1988). Further, the scope of review as to an appellee is not limited to the er-

rors assigned by the appellant where judgment below was entirely in favor of appellee. In such a case, an appellee may argue to sustain the judgment on any basis supported in the record without the need to file a cross-appeal. *People v. Hamm*, 149 Ill. 2d 201, 215 (1992).

Accordingly, we consider the city's argument, advanced before this court and in its motion for a directed verdict, that plaintiff failed to present any evidence that a custom, practice, or policy of the city caused a deprivation to plaintiff of his procedural due process rights.[2]

■ ■ The Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, provides in relevant part:

> "Every person who, under color of any statute, ordinance, regula-
> tion, custom, or usage, of any State *** subjects, or causes to be
> subjected, any citizen of the United States *** to the deprivation
> of any rights, privileges, or immunities secured by the Constitu-
> tion and laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress." 42
> U.S.C. § 1983 (1988).

The purpose of this statute is to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 118 L. Ed. 2d 504, 511, 112 S. Ct. 1827, 1830 (1992). Where a plaintiff sues a municipality under section 1983, two distinct issues must be examined: (1) whether a violation of some constitutionally protected right caused plaintiff's injury, and (2) whether the municipality is responsible for the violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 117 L. Ed. 2d 261, 270, 112 S. Ct. 1061, 1066 (1992). Examination of the second issue requires adherence to the rule of law set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). There the United States Supreme Court held that liability under section 1983 will only attach to a municipality where the plaintiff's injury was the product of an official policy, custom, or practice:

> "[A] municipality cannot be held liable *solely* because it employs
> a tortfeasor—or, in other words, a municipality cannot be held li-
> able under § 1983 on a *respondeat superior* theory.

* * *

---

[2]Although the city's motion for a directed verdict addresses both the procedural and substantive due process claims made by plaintiff, plaintiff has apparently abandoned the latter as he has failed to advance any argument on appeal on this issue. Accordingly, the matter is waived. 155 Ill. 2d R. 341(e)(7); *People v. Dinger*, 136 Ill. 2d 248, 254 (1990).

\*\*\* Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[s] the injury that the government as an entity is responsible under § 1983." (Emphasis in original.) *Monell*, 436 U.S. at 691-94, 56 L. Ed. 2d at 636-38, 98 S. Ct. at 2036-38.

See also *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992); *Ceko v. Martin*, 753 F. Supp. 1418, 1421 n.2 (N.D. Ill. 1990); *Veach v. Cross*, 178 Ill. App. 3d 102, 109, 532 N.E.2d 1069 (1988); *Loftus v. Mingo*, 158 Ill. App. 3d 733, 742, 511 N.E.2d 203 (1987).

■ Plaintiff here alleged a violation of his procedural due process rights. To sustain such a claim, plaintiff must demonstrate: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993). As plaintiff correctly maintains, a police officer has a property interest in his continued employment (*Dudycz*, 206 Ill. App. 3d at 135), as well as the benefits, such as salary, associated with that employment, which cannot be taken away without due process. *Ceko*, 753 F. Supp. at 1423. Preliminarily, we note that plaintiff was not on the police department's payroll. Assuming, however, that plaintiff's property interest in continued employment with the department was unaffected by his on-leave status, the evidence adduced at trial failed to demonstrate a deprivation.

■ The evidence established that plaintiff was approved for reinstatement at full seniority and the highest pay scale, that an agreed start date was established which accommodated plaintiff's vacation, that plaintiff failed to report for duty as agreed, and that plaintiff subsequently resigned. There was no evidence that plaintiff's employment was terminated or that he was prevented from returning to active duty with the department.

Plaintiff, nonetheless, attaches much importance to the fact that no one from the city advised plaintiff that he had been approved for reinstatement on the terms sought. Joseph Beazley, director of personnel, testified that the personnel section had a responsibility to so notify plaintiff. Even if true, a mere lack of due care by a state official is not a deprivation. See *Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986) (due process clause not implicated by negligent act of state official causing unintended loss of or injury to life, liberty, or property; to hold otherwise would trivialize due process law). Without a deprivation of plaintiff's property interest, the issue of due process never arises. *Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991). Similarly, negligent supervision of

subordinates will not give rise to liability under section 1983. *Wilson v. City of Chicago*, 6 F.3d 1233, 1241 (7th Cir. 1993).

While plaintiff generally asserts a right to continued employment, he also more specifically asserts a right to immediate reinstatement at a particular salary and seniority level. We note that property rights are not conferred by the constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ***." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972).

Here, there was evidence that, according to departmental policy, an officer such as plaintiff, who was returning from an approved leave of absence to perform other law enforcement work, would be credited with full seniority, salary and benefits. Plaintiff nonetheless fails to identify the source of his alleged property interest in *immediate* reinstatement upon application. The department's leave of absence policy on which plaintiff generally appears to rely does not require immediate reinstatement:

> "When a leave has been granted properly and when the member is prepared to return to work in conformity with the terms and conditions of the leave of absence, the member *** will be restored to his or her position in the career service, provided that the position is available."

Thus, restoration of plaintiff to his career service position must be in conformity with the terms and conditions of the leave of absence. As the trial court observed, the evidence established that an officer returning from a leave of absence such as plaintiff's is required to undergo a medical screening. Nowicki, Beazley, Sheerin and Mesnick all testified accordingly. The only witness who testified to the contrary was Brzeczek. Additionally, John Dineen, president of the Fraternal Order of Police, Lodge 7, testified that he was aware that the department has requirements for mandatory physicals under certain circumstances and that such requirements are permissible under the collective bargaining agreement. Furthermore, pursuant to a general order of the department, exempt members of the department or the chief police surgeon may order any member to submit to a physical examination to determine fitness for duty. Significantly, plaintiff presented no evidence that the fitness-for-duty requirement had been waived as a condition of his leave of absence. Having thus failed to establish that he had a cognizable property interest in immediate reinstatement, plaintiff's procedural due process claim cannot be maintained on this basis. See *Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991) (former fire fighter's section 1983 suit

complaining of delay in payment of disability benefits dismissed where no entitlement to immediate payment of benefits was established under governing statute).

Even if the reasonable inferences to be drawn from the evidence here established both a property interest and a deprivation, because there was no evidence that such deprivation was the result of an official policy, custom or practice of the city, plaintiff's claim must fail. See *Monell*, 436 U.S. at 694, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037. Although plaintiff disputes that he was required to prove this element of his section 1983 claim, the case law is clear that no liability to a municipality will result unless an official policy of the municipality is the "moving force" of the constitutional violation. *Monell*, 436 U.S. at 694, 56 L. Ed. 2d at 638, 98 S. Ct. at 2037. The record is devoid of any evidence of a municipal policy at work here.

At most, the evidence establishes that Deputy Superintendent of Police Nowicki misstated departmental policy when he allegedly advised Brzeczek that plaintiff could only return as a new hire.[3] Such isolated conduct of a municipal official will only sustain a section 1983 claim against the municipality where the official had final policymaking authority in that area of the municipality's business and a governmental policy could thus be inferred. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-27, 99 L. Ed. 2d 107, 116-20, 108 S. Ct. 915, 923-26 (1988). Plaintiff does not argue on appeal, nor are we otherwise persuaded, that Nowicki possessed final policymaking authority for the city as to pay and seniority terms under which an officer's reinstatement would be approved. See *Auriemma v. City of Chicago*, 747 F. Supp. 465 (N.D. Ill. 1990), *aff'd sub nom. Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992) (police superintendent does not possess final policymaking authority for municipal employment policy and thus city not liable under section 1983 for allegedly discriminatory employment decisions by superintendent). Moreover, even if Nowicki's purported statements to Brzeczek served to defeat a municipal employment policy, no section 1983 liability will attach. *Auriemma*, 957 F.2d at 400 (*Monell* tells us that to hold the municipality liable,

---

[3]The testimony on this point is not consistent. Brzeczek testified that plaintiff advised him that he had been offered reinstatement only as a new police officer. Brzeczek also testified that he contacted Nowicki, who advised him in October 1985 that plaintiff could only return as a new hire. Nowicki denied having such a discussion with Brzeczek, but testified nonetheless that he thought plaintiff would not get credit for time spent working in the law department. Plaintiff, in turn, testified that the only person to advise him that he could only return as a new hire was Brzeczek.

the agent's action must implement rather than frustrate the government's policy).

Considering the evidence in the light most favorable to plaintiff and making all reasonable inferences therefrom, we conclude that the evidence so overwhelmingly favors the city that no contrary verdict could ever stand. See *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). Plaintiff simply failed to establish the essential elements of his section 1983 cause of action. Thus, any error as to the propriety of the jury instructions will not provide a basis for reversal. See *Grass v. Hill*, 94 Ill. App. 3d at 718.

■ We also find that admission into evidence of certain conversations between plaintiff and Brzeczek concerning Brzeczek's conversations with Nowicki would not add materially to the proofs presented at trial and would not alter this court's conclusion that the city was entitled to judgment as a matter of law. Therefore, any error by the trial court in granting the city's motion *in limine* to bar such evidence was at most harmless. See *Ford v. City of Chicago*, 132 Ill. App. 3d 408, 416, 476 N.E.2d 1232 (1985). We similarly find that any error in withholding from the jury pleadings filed in plaintiff's 1986 chancery court action was harmless.

Based on the foregoing, we affirm the judgment of the trial court in favor of the city as to defendant's section 1983 claim.

### III

Finally, plaintiff contends that the trial court erred in denying his motion for sanctions. Plaintiff argues that the city failed to perform any investigation into the facts and law of the case or, alternatively, withheld highly relevant information. Specifically, plaintiff claims that the city failed to disclose that plaintiff had been approved for reinstatement on the terms sought and that the city acted inconsistently with such information by denying, throughout the course of this litigation, that plaintiff had any entitlement to return to his job with full pay and seniority.

■ Sanctions may be imposed under Supreme Court Rule 137 where a party or counsel files a pleading that is not well grounded in fact, is not warranted by existing case law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose. 155 Ill. 2d R. 137. Because the rule is penal in nature, it will be strictly construed. *In re Marriage of Pitulla*, 256 Ill. App. 3d 84, 90, 628 N.E.2d 563 (1993). The test for determining whether a violation has occurred is an objective standard of what was reasonable under the circumstances at the time of filing. *Village of Lake Barrington v. Hogan*, 272 Ill. App. 3d 225, 235,

649 N.E.2d 1366 (1995). The grant or denial of a motion for sanctions is within the sound discretion of the trial court and will not be reversed on review absent an abuse of discretion. *In re Estate of Wernick*, 127 Ill. 2d 61, 77-78 (1989).

Based on our review of the record, we cannot say that the trial court abused its discretion in denying plaintiff's motion for sanctions. Plaintiff seems to suggest that there was something inherently improper about the city's challenge to the legal sufficiency of plaintiff's various complaints. Plainly, however, before proceeding to the merits of plaintiff's claims, it was incumbent upon plaintiff to state a valid cause of action. Similarly, there was nothing improper about the city's challenge to plaintiff's claims on procedural grounds. We note that the city prevailed on several of the motions plaintiff seeks to characterize as frivolous.

We also reject plaintiff's contention that the city improperly withheld information relative to the department's approval of plaintiff's reinstatement, resulting in protracted litigation. Plaintiff argues that rather than acknowledge that plaintiff's reinstatement had been approved at full pay and seniority, the city responded to his initial complaint in the chancery court with a motion to strike and dismiss. Again, we cannot say that the city's challenge to the legal sufficiency of plaintiff's complaint was improper. Further, plaintiff's amended complaint in chancery was dismissed for want of prosecution. Thus, any delay in the ultimate resolution of plaintiff's claims arising out of his chancery court action is not the fault of the city.

In addition, by the time plaintiff filed the instant action in the law division, he had already resigned to accept his retirement pension more than a year prior. Based on department rules, thirty days after the effective date of plaintiff's resignation, he would not have been entitled to reinstatement except as a new hire. Thus, we cannot say that the city's denial of a right to reinstatement at that time was necessarily inconsistent with the city's knowledge that plaintiff had previously been approved for reinstatement on the terms sought. Moreover, the mere fact that the city approved plaintiff's request for reinstatement is not tantamount to recognition by the city of a property interest in immediate reinstatement. Thus, there was nothing improper about defending this action on the basis that plaintiff had no such property interest. Finally, plaintiff fails to identify what other state law claims he might have pursued had the city informed him that he had been approved for reinstatement at full pay and seniority in September 1985. In any event, there is no evidence that the city withheld information merely to frustrate plaintiff's ability to pursue additional claims against the city or for any other improper

908

purpose. Accordingly, we affirm the trial court's denial of plaintiff's motion for sanctions.

For all the foregoing reasons, the judgment of the trial court in favor of the city is affirmed.

Affirmed.

McNULTY, P.J., and COUSINS, J., concur.