PAULINE GRASS et al., Plaintiffs-Appellants, v. DAVID F. HILL, Defendant-Appellee.

Second District    No. 80-118

Opinion filed March 27, 1981.

Bernard P. Reese, Jr., of Reese & Reese, of Rockford, for appellants.

Eugene E. Brassfield, of Brassfield, Cowan & Howard, of Rockford, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The plaintiffs, Pauline Grass and her husband Raymond J. Grass, appeal from a judgment entered on a jury verdict in a personal injury action resulting from an automobile accident in which Pauline Grass sustained serious bodily injuries. The jury rendered a general verdict in favor of the defendant, David Hill, and against the plaintiffs. The jury also answered a special interrogatory finding Pauline Grass guilty of contributory negligence. On appeal, the plaintiffs contend that the trial court erred in denying their post-trial motion for a judgment notwithstanding the verdict, or alternatively, for a new trial. They also assert that the trial court committed reversible error in instructing the jury and in refusing to admit into evidence the defendant's original answer.

The accident in question occurred at approximately 7:30 a.m. on May 10, 1976, at the intersection of Spring Creek Road and Shaw Road in Boone County. At the time of the accident both roads were two-lane rural highways, each of which had one lane for traffic in each direction. Spring Creek Road was a paved, through highway which ran east and west, while Shaw Road was a gravel road which ran in a north-south direction. On that particular morning, the weather was clear and the pavement was dry. At that time on Spring Creek Road, there were no signs indicating the presence of the intersection, nor were there any pavement markings prohibiting westbound vehicles from passing near the intersection. A photograph in evidence disclosed that the intersection was clearly visible from a distance of 400 feet. Pauline Grass, who had been proceeding westerly along Spring Creek Road, was in the process of turning left from Spring Creek Road onto Shaw Road when her vehicle was struck by that of the defendant. The defendant was travelling westbound in the eastbound lane of Spring Creek Road and was attempting to pass three westbound vehicles, including the Grass automobile, when he collided with the vehicle being driven by Mrs. Grass.

Pauline Grass testified that she did not remember what had occurred on May 10, 1976, at or before the time of the intersectional collision. She had no recollection of the accident or of being on Spring Creek Road on the day in question.

On the morning of the accident, Nancy Hennelly was travelling west on Spring Creek Road behind the Grass vehicle. At least one other car was

behind the Hennelly automobile. When she first approached the Grass automobile, approximately three blocks east of where the collision occurred, the vehicle was travelling at 30-35 m.p.h. As the Grass vehicle continued westbound, it slowed down further to make a left turn. Hennelly, who was following the Grass automobile at a car length's distance, was aware that this vehicle immediately in front of her was going to turn, even though she did not remember or could not recall seeing any turn signals or brake lights activated on the Grass vehicle prior to its turn. Upon cross-examination, she stated that while she might have had some warning that the Grass vehicle was preparing to turn one way or the other, she did not recall any such warning. The Grass vehicle was proceeding slowly when it started to turn left at the intersection. The Grass vehicle was in the middle of the eastbound lane of traffic on Spring Creek Road when it was struck by the defendant's automobile. Hennelly stated that the defendant's vehicle, which had passed her a second before the accident, was proceeding quite a bit faster than the other vehicles, approximately 50-55 m.p.h. In addition, she did not recall seeing another car pass the Grass automobile before the intersection and did not recall hearing the sound of a horn before the accident.

Crystalline Wilcox was also westbound on Spring Creek Road on the morning of the collision. She testified she was travelling at 35 m.p.h. and was proceeding behind three other westbound vehicles. The Grass vehicle was the farthest from her; an unidentified vehicle was proceeding directly behind the Grass car, and the Hennelly automobile was travelling immediately in front of the Wilcox vehicle. As the Grass vehicle approached the intersection of Spring Creek and Shaw Roads, the car immediately behind it passed the Grass car. As that car passed the Grass automobile, Wilcox noticed that the Grass vehicle had its left turn signal on. Almost simultaneously she saw the defendant's car start to pass her; she applied her brakes and sounded her horn to warn the drivers of the Hill and Grass vehicles of the impending accident. The Grass vehicle was in the eastbound lane on Spring Creek Road and was attempting to turn from Spring Creek Road onto Shaw Road, when it was hit broadside by the Hill automobile. Wilcox did not see the Hill vehicle before it passed her. Wilcox's deposition testimony, which was introduced at trial, indicates that she was approximately 100 feet from the intersection when she first noticed the turn signal on the Grass car and saw the Hill vehicle alongside her in the eastbound lane of Spring Creek Road.

The plaintiff called the defendant, David Hill, as a witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) He testified that on the morning in question he was westbound on Spring Creek Road travelling at approximately 55 m.p.h. As he came over the crest of a hill, about 1500 feet east of the intersection of Shaw and Spring

Creek Roads, he noticed three other westbound vehicles which were travelling at a slower rate of speed. At the pretrial deposition he estimated their speed to be 30-40 m.p.h. Two or three hundred feet before he reached the Wilcox vehicle, he signalled and pulled out into the eastbound lane to pass the string of cars. As he did so, he increased his speed to between 60 and 65 m.p.h. After he got into the eastbound lane, he removed his foot from the accelerator, and as he started to pass the vehicles he was proceeding at a constant speed of approximately 60 m.p.h.

As he was approaching the three vehicles, and seconds before he began to pass the Wilcox car, he noticed that the brake lights of the Wilcox automobile came on. On cross-examination, Hill stated he was in the eastbound lane attempting to pass when he first noticed the brake lights on the Wilcox vehicle. As he began to pass the Wilcox vehicle he observed that it began to pull over onto the shoulder of Spring Creek Road. When he looked back onto the highway, he saw the Grass vehicle beginning to make its turn south onto Shaw Road. At this point he was approximately 100 feet from the intersection and was travelling between 55 and 60 m.p.h. He applied his brakes and tried to swerve to miss the Grass vehicle, which was mostly in the eastbound lane of Spring Creek Road and partially onto Shaw Road. Hill estimated that the Grass car was travelling 5 or 10 m.p.h. when it began to turn left at the intersection.

Hill further testified that he checked all the cars in the group he was about to pass for any flashing lights, turn signals or brake lights. He did not see any turn signals coming from any of the three vehicles preceding him. However, Hill did state that at the scene of the accident he overheard Mrs. Wilcox say that Mrs. Grass had her turn signal on. He also stated that visibility was good on the morning of the accident and nothing in his automobile was obscuring his vision. He indicated that, prior to the accident, he was not familiar with the intersection in question. He usually took a different route on his way to classes at Rockford College; therefore, he had driven along Spring Creek Road only four or five times and was not aware of the intersection until after the collision. Hill had no problem, however, in finding the intersection in a photograph taken approximately 400 feet east of the intersection along Spring Creek Road. He maintained, however, that the view depicted in the photograph, which was introduced into evidence, did not represent the view he had of the intersection on the day of the collision.

John Hayes, deputy sheriff of the Boone County sheriff's department, testified that when he investigated the automobile accident, he observed skid marks on the pavement of the eastbound lane of Spring Creek Road. He stated that the skid marks measured 90 feet to the point of impact and were created by the Hill vehicle. Hayes also remarked that

as he approached the intersection while travelling westbound on Spring Creek Road, he did not observe anything obstructing his view of the intersection. He further recalled that the defendant told him he did not see the Grass car turning in front of him.

It is axiomatic that the jury has the preeminent responsibility to ascertain whether the defendant exercised reasonable care, whether his failure to do so proximately caused the plaintiff's injuries and whether the plaintiff was free from contributory negligence. (*Lode v. Mercanio* (1979), 77 Ill. App. 3d 150, 154.) While the determination of a defendant's negligence is ordinarily a question of fact to be submitted to the jury, it may be decided as a matter of law where all reasonable men, of fair understanding, would agree in their deductions from the evidence that the defendant was guilty of negligence in the operation of his vehicle at the time and place in question. *Kocour v. Mills* (1959), 23 Ill. App. 2d 305, 311.

■■■ After reviewing the evidence in this case, we find that the defendant was guilty of negligence as a matter of law because all reasonable men considering the evidence in this case would so agree. The evidence in this case establishes that the defendant, while travelling at a high rate of speed, attempted to pass three slow moving vehicles within 100 feet of an intersection in violation of section 11—706(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—706(a)(2)). Although the violation of a motor vehicle statute cannot be considered negligence *per se* but only *prima facie* evidence of negligence, the negligence of the defendant is actionable if it is shown that such statutory violation was a proximate cause of the plaintiff's injuries. *Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, 1000; *Harrison v. Pullens* (1967), 83 Ill. App. 2d 245, 248; *Hestand v. Clark* (1952), 345 Ill. App. 480, 485; see *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 473; *Csalany v. Senesac* (1968), 91 Ill. App. 2d 241, 244.

The defendant admitted that a photograph introduced into evidence showed that the intersection in question was clearly visible from a distance of 400 feet. Any suggestion that the three vehicles which the defendant attempted to pass obstructed his view of the intersection does not withstand close scrutiny. The defendant's own testimony establishes that he pulled out to pass in the eastbound lane of Spring Creek Road when he was 200 to 300 feet behind the Wilcox vehicle. Given the speed with which the defendant was travelling and the fact that he skidded 90 feet along Spring Creek Road after applying his brakes and before entering the intersection, it is clear that he was in the eastbound lane for a considerable distance from the intersection, and from that vantage point he had an unobstructed view of the intersection.

■■ It is well established that a motorist will be deemed to have observed that which he would necessarily have seen if he had looked, and

testimony that he looked but did not see will not absolve him of the charge of negligence occasioned by his failure to look. In other words, one cannot look with an unseeing eye and not see that which he could have viewed by the proper exercise of his sight. *Hicks v. Donoho* (1979), 79 Ill. App. 3d 541, 544; *Pantlen v. Gottschalk* (1959), 21 Ill. App. 2d 163, 170; see *Old Second National Bank v. Gould* (1979), 75 Ill. App. 3d 839, 844.

The intersection in question was reasonably, if not clearly obvious. Therefore, the defendant knew or had reasonable cause to know of the presence of the intersection to avoid violating section 11—706(a)(2) of the Illinois Vehicle Code. (See Annot., 53 A.L.R. 2d 850, 870 (1957).) In addition, the defendant testified that, while he was engaged in passing three automobiles, he glanced from the highway to view the Wilcox vehicle, and when he looked back onto Spring Creek Road he noticed that the Grass car had already started to turn. In this regard, the defendant, who was engaged in a potentially dangerous passing maneuver, was not as attentive to the preceding traffic as he should have been. Moreover, we point out that the present case does not involve a situation where the defendant was proceeding slowly and sounded his horn as he started to pass. Compare *Csalany v. Senesac* (1968), 91 Ill. App. 2d 241.

■■■ Thus, the crucial inquiries in this case are whether plaintiff, Pauline Grass, was contributorily negligent and whether her negligence was a proximate cause of the accident. We give, of course, due weight to the fact that the jury by its answer to the special interrogatory indicated that the plaintiff was so guilty. A special interrogatory may be set aside, however, where it is against the manifest weight of the evidence or where it is not supported by any competent evidence. (*Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, 1004.) The only evidence adduced by the defendant with regard to plaintiff's contributorily negligence is that she failed to use her turn signal in violation of the turn signal statute. Ill. Rev. Stat. 1975, ch. 95½, par. 11—804(b).

■■ In this regard, we note that even though Nancy Hennelly, who just prior to the accident was directly behind the plaintiff, could not recall whether plaintiff's turn signal was operating, she was aware that plaintiff had slowed her vehicle and intended to make a turn. Crystalline Wilcox, the driver of the second vehicle, testified positively that the plaintiff's turn signal was on and operating at the time she commenced her turn. While the defendant testified that he did not see the turn signal operating on plaintiff's vehicle, we note that in his original unverified answer, the defendant admitted plaintiff's left turn signal was operating. The trial court erred in not allowing the plaintiff to place this answer into evidence as an admission against interest. *Texas Eastern Transmission Corp. v. McCrate* (1979), 76 Ill. App. 3d 828, 833; *Kleb v. Wendling* (1978), 67 Ill.

App. 3d 1016, 1018. But see *Merritt v. Greves* (1979), 82 Ill. App. 3d 863, 866.

We should also point out that in answering the special interrogatory concerning plaintiff's contributory negligence, the jury may have been misled because the trial court erred in giving defendant's jury instructions 21 and 22.

Defendant's instruction 21, the statutory violation instruction (Illinois Pattern Jury Instructions, Civil, No. 60.01 (2d ed. 1971) (hereinafter cited as IPI Civil), which incorporated section 11—703 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—703), reads as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> > 'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
> >
> > 1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movements.
> >
> > The following rules govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules otherwise stated in this Chapter.
> >
> > (a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
> >
> > (b) * * * the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.'
>
> If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent or contributorily negligent before and at the time of the occurrence."

■■ The plaintiffs contend that the giving of this instruction constituted reversible error because it sets forth the statutory right-of-way of a passing vehicle over the vehicle being passed in a proper or normal situation, and not in a situation where the vehicle was passing within 100 feet of an intersection in violation of section 11—706(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—706(a)(2).) The present case does not involve a normal passing situation, but rather concerns a passing maneuver which was conducted within 100 feet of an intersection

in violation of a traffic statute. The plaintiffs correctly assert that defendant's instruction 21 is in direct contrast to and inconsistent with the law applicable to intersection passing and contained in their own instruction 21. Plaintiff's instruction 21, which was also given to the jury, incorporated the provisions of section 11—706(a)(2).

■■ Furthermore, in contradistinction to subsection (b) of defendant's instruction 21, there is no evidence in this case that the defendant gave an audible signal upon passing or that Pauline Grass increased the speed of her vehicle at any time. It was error to give this instruction under these facts. This instruction could well have misled the jury into concluding that the defendant was entitled to the right-of-way and that plaintiff had a duty to watch out for and yield to him even though he was illegally passing within 100 feet of an intersection. Such conclusion could have resulted in a serious misapplication of the law. While there is authority that left turn drivers have a duty to watch out for normal overtaking traffic, they have no duty to watch out for abnormal overtaking traffic such as a vehicle passing at an intersection. *Ducote v. Allstate Insurance Co.* (La. App. 1970), 242 So. 2d 103, 106.

Defendant's instruction 22 was also in the form of the statutory violation instruction (IPI Civil No. 60.01 (2d ed. 1971)), and incorporated section 11—804 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—804). It states the following:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'(a) No person may turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

(b) A signal of intention to turn right or left when required must be given continuously not less than the last 200 feet traveled by the vehicle before turning outside a business or residence district.

(c) No person may suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this Chapter.'

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

On appeal, the plaintiffs maintain that subsection (c) of the above instruction was erroneously given to the jury because there is no evidence

in the record that Mrs. Grass suddenly decreased the speed of her vehicle. A careful examination of the record in this case reveals that there is not a scintilla of evidence demonstrating or even suggesting that when approaching the intersection, Pauline Grass suddenly decreased her speed. To the contrary, all evidence, as set forth earlier in this opinion, indicates that Mrs. Grass slowly approached the fateful intersection at a speed of 30-35 m.p.h., that she further slowed her vehicle as she arrived near the intersection and that when she began to turn she was proceeding between 5-10 m.p.h. In light of the evidence and applicable legal principles, we conclude the trial court erred in giving defendant's instruction 22.

Furthermore, even if plaintiff violated the turn signal statute (Ill. Rev. Stat. 1975, ch. 95½, par. 11—804(b)), such violation was not the proximate cause of the accident or plaintiff's injuries. It is uncontested that from the manner in which plaintiff was operating her motor vehicle, both Nancy Hennelly and Crystalline Wilcox, who were operating their respective motor vehicles in compliance with the law and directly behind plaintiff's vehicle, were aware that plaintiff intended to make a left turn at the intersection. Also it cannot be disputed that if defendant had been operating his motor vehicle in compliance with the requirements of the law, rather than attempting to pass three motor vehicles at a high rate of speed within 100 feet of an intersection, the accident would not have occurred.

■■ While the instructional errors when combined with the evidentiary errors are a sufficient basis to grant the plaintiff a new trial, we do not deem that necessary in this case because it is our determination that the sole proximate cause of the accident was the defendant's negligence and that the plaintiff was not contributorily negligent because of a possible violation of the turn signal statute. *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664.

■■ The trial court should have granted the plaintiff's motion for a judgment notwithstanding the verdict on the issue of liability because the evidence, when viewed in the light most favorably to the defendant, so overwhelmingly favors the plaintiff that no verdict other than that for the plaintiff could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.

For the reasons stated herein the judgment of the trial court is reversed and judgment is entered in favor of plaintiffs and against defendant on the issue of liability and the cause is remanded to the trial court for a new trial on the issue of the plaintiffs' damages only.

Reversed and remanded.

UNVERZAGT and NASH, JJ., concur.