FIFTH DIVISION
 November , 1996

No. 1-94-2439

ESTATE OF RALPH STROCCHIA, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County
 )
 v. )
 )
THE CITY OF CHICAGO, ) No. 88 L 7762
LEROY MARTIN, SUPERINTENDENT OF )
POLICE, FRED RICE, JR., DENNIS )
E. NOWICKI, JOSEPH BEAZLEY and )
JOHN SHEERIN, ) The Honorable 
 ) Ronald C. Riley,
 Defendants-Appellees. ) Judge Presiding

 JUSTICE HOURIHANE delivered the opinion of the court:
 This appeal arises out of a civil rights action filed by
Ralph Strocchia (Strocchia), a career service officer with the
Chicago Police Department, against the City of Chicago, pursuant
to the provisions of 42 U.S.C.  1983 (1988). Strocchia claimed
that the department's handling of his request for reinstatement
to the police force following an approved leave of absence
resulted in violations of his procedural and substantive due
process rights. Strocchia appeals from the judgment of the
circuit court entered upon a jury verdict in favor of the city. 
 On appeal, Strocchia asserts that the trial court erred by
improperly instructing the jury; dismissing his state
constitutional claims; denying his motions to amend the pleadings
and for equitable relief; ruling incorrectly on certain
evidentiary matters; and denying his motion for sanctions.
 For the reasons that follow, we affirm the judgment of the
trial court in favor of the city.
 BACKGROUND
 In 1981, plaintiff was a Chicago police officer assigned to
the Traffic Division, Scofflaw Unit. Having served on the force
for 29 years, he was classified as a "career service" employee of
the city. On January 1, 1982, the Scofflaw Unit became a part of
the city's law department. Plaintiff, along with several other
police officers, took approved leaves of absence from the police
department for calendar year 1982 and continued to work in the
Scofflaw Unit under the auspices of the city's law department. 
Additional leaves of absence were granted for 1983 and 1984 for
this purpose. 
 Plaintiff testified that at the time his initial leave of
absence was granted, Hugh Conwell, who organized and headed up
the Scofflaw Unit within the law department, advised him that he
could return to the police department at the end of any approved
leave, without loss in salary or seniority. Plaintiff was
assured that the only difference between working for the law
department and the police department was the payroll. As part of
the transfer to the law department, arrangements were made with
the Policemen's Annuity and Benefit Fund of Chicago so that
plaintiff could make his pension contributions to the fund by
personal check, rather than by payroll deductions. This
preserved his continued service credit with the police department
pension fund.
 In 1984, the law department was reorganized and the position
plaintiff occupied in the Scofflaw Unit was no longer treated or
paid the same as a police officer. Thus, plaintiff and other
officers similarly situated applied for reinstatement to their
career service positions in the police department. In connection
with plaintiff's reinstatement, on December 17, 1984, he reported
for a medical examination to determine fitness for duty. The
exam could not go forward because plaintiff ate breakfast that
morning. Budgetary problems in the police department delayed
rescheduling of the exam until January 22, 1985. For the most
part, the other officers who sought reinstatement successfully
completed their physicals and were returned to the force on or
about January 1, 1985. 
 Following plaintiff's physical on January 22, Dr. Paul
Mesnick, the police department's Chief Surgeon, advised plaintiff
that a cardiac stress test was needed to complete the exam. The
stress test was ordered in response to plaintiff's disclosure on
a medical questionnaire that while on leave he had undergone
brain surgery following a small stroke. Also while on leave, he
was diagnosed as a diabetic. By the end of February 1985,
plaintiff completed all required tests, but Dr. Mesnick wished to
review the medical records from plaintiff's brain surgery. 
 Apparently frustrated by the delay in his reinstatement, in
June or July 1985, plaintiff contacted former Superintendent of
Police Richard Brzeczek for assistance. Brzeczek, an attorney in
private practice, contacted former associates in the department
concerning the status of plaintiff's reinstatement. Shortly
thereafter, and prompted by a telephone call from an aid to then
Deputy Superintendent of Police Dennis Nowicki, plaintiff finally
signed the release for medical records on July 11, 1985. The
records were received by the department August 8, 1985, and three
weeks later the department began taking formal steps to reinstate
plaintiff at full seniority. 
 In an August 28, 1995 letter to Nowicki, Brzeczek requested
that plaintiff be reinstated and demanded back-pay to January 1,
1985. Around the same time, plaintiff was advised by John
Sheerin, Assistant Director of Personnel, that he could return to
the force on September 16, 1985, but this date conflicted with a
European vacation plaintiff already had scheduled. Rather than
delay his reinstatement, plaintiff requested that he be put on
furlough beginning September 16. Commanding officers are allowed
to decide such requests, but until plaintiff returned to work and
received a duty assignment, he would have no commanding officer. 
Thus, during a conversation between plaintiff and Sheerin it was
agreed that plaintiff would return one month later on October 16. 
According to plaintiff, Sheerin could not say what plaintiff's
pay or seniority would be upon his return. Although plaintiff
had earlier been advised by personnel that payroll information
could be obtained through the finance division, plaintiff never
contacted this office. On September 5, 1985, unbeknownst to
plaintiff, the department approved plaintiff's reinstatement at
full seniority and at the highest pay rate.
 On September 4, 1985, Nowicki responded in writing to
Brzeczek's August 28 letter. Nowicki attributed the delay in
reinstatement to plaintiff's own conduct and the need to resolve
some serious medical issues. Nowicki acknowledged that the
September 16 start date conflicted with plaintiff's vacation, but
did not mention the new start date of October 16. Rather,
Nowicki stated that plaintiff should notify the department in
writing upon his return of his future availability, which was
never done.
 Upon return from vacation, plaintiff first contacted
Brzeczek who, according to plaintiff, advised him that the
department was only offering reinstatement as a new hire. 
Brzeczek purportedly received this information from Nowicki. 
Plaintiff subsequently advised Sheerin that he was ready to
return to work on October 16. Once again, Sheerin could not tell
him what pay or seniority had been approved. Without first
advising anyone in the department, plaintiff decided not to
report for duty on October 16. Having failed to appear for work
as scheduled, Rita Zimmerman in personnel checked with the law
department and learned that plaintiff was still working there. 
Zimmerman did not speak directly with plaintiff. She advised
payroll that plaintiff's return to duty was cancelled and that
there was no corrected date for his return. Had plaintiff
remained on both payrolls, his check from the law department
would have been automatically cancelled. 
 On November 7, 1985, the department's approval of
plaintiff's reinstatement was extended 60 days to early January
1986. Plaintiff was not notified of this action and at no time
did he report for duty. Rather, plaintiff continued to take
successive extensions of his leave of absence so that he could
continue working in the law department. The last such extension
was through 1986.
 On January 10, 1986, plaintiff filed a petition for
declaratory judgment in the chancery court seeking a ruling that
he was entitled to reinstatement at his full salary and
seniority, as well as backpay to January 1, 1985. Shortly
thereafter, plaintiff resigned from the department, effective
February 16, 1986. He noted on the departmental form that he was
"[r]etiring due to circumstances beyond [his] control." 
 Four months after his resignation/retirement, plaintiff
amended his complaint in the chancery court, this time alleging a
violation of his equal protection and due process rights, as well
as a breach of his employment contract by the department for its
failure to reinstate him and to pay him for accumulated overtime. 
He sought money damages only. His amended complaint was
dismissed for want of prosecution on April 28, 1987. 
 One year later, he filed a complaint in the law division
alleging that plaintiff had been singled out for additional
medical testing and that the department had refused to reinstate
him on the same terms as the other officers who had gone over to
the law department. He asserted violations of his right to equal
protection of the laws, violations of his due process rights, and
breach of his employment contract. Plaintiff sought money
damages only. 
 In October, 1993, trial proceeded on his second amended
complaint, which alleged in count I a violation of his procedural
due process rights, and in count II a violation of his
substantive due process rights. Plaintiff sought reinstatement
and money damages. The jury returned a verdict in favor of the
city and plaintiff's post-trial motions for judgment
notwithstanding the verdict or a new trial were denied. The
trial court also denied plaintiff's motion for sanctions based
upon the city's purported failure to investigate the facts of the
case or to disclose known facts. This appeal followed. 155 Ill.
2d R. 301. 
 ANALYSIS
 I
 We first consider whether the trial court erred by
dismissing count III of plaintiff's second amended complaint. On
the eve of trial, plaintiff was granted leave to file a second
amended complaint adding a new count III for retaliatory
discharge. However, as filed by plaintiff, count III contained
allegations not only of retaliatory discharge, but state
constitutional claims as well. The trial court granted the
city's motion to dismiss brought under section 2-615 of the Code
of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1994)), finding
that the retaliatory discharge claim was actually premised on the
constructive discharge of plaintiff, which could not support a
retaliatory discharge claim. The trial court also struck all
allegations in count III relating to state constitutional claims
based on surprise and lack of notice to defendant, but left open
the issue of whether plaintiff's complaint could subsequently be
amended to include such claims. 
 On review of a motion to dismiss pursuant to section 2-615
of the Code, this court must consider whether, when viewed in a
light most favorable to plaintiff, the facts alleged in the
complaint adequately set forth a cause of action upon which
relief may be granted. The issue is one of law and review is de
novo. Majumdar v. Lurie, 274 Ill. App. 3d 267, 268, 563 N.E.2d
915 (1995). 
 Count III of plaintiff's second amended complaint contains
allegations that plaintiff involuntarily resigned from the
department in response to the city's continuous and wrongful
position that he could not return except as a new hire. 
Plaintiff alleged that the city's refusal to reinstate him prior
to filing suit was done either negligently or in retaliation for
his refusal to waive backpay, and that the city's continued
refusal to reinstate him was in retaliation for the filing of his
lawsuit. Finally, plaintiff alleges that the city's conduct
constitutes a discharge of plaintiff in contravention of the
public policy of the state. Such facts, even if true, would not
entitle plaintiff to relief based on a theory of retaliatory
discharge.
 To succeed on a claim for retaliatory discharge, an employee
must plead and ultimately prove (1) that he was discharged; (2)
that the discharge was in retaliation for his activities; and (3)
that the discharge violates a clear mandate of public policy. 
Hartlein v. Illinois Power Co., 151 Ill. 2d 142, 160 (1992). 
Mere assertions by a plaintiff that he was "compelled" to resign
are insufficient and Illinois courts have thus consistently
declined to extend the tort of retaliatory discharge to encompass
the concept of constructive discharge. Hartlein, 151 Ill. 2d at
163; Dudycz v. City of Chicago, 206 Ill. App. 3d 128, 133, 563
N.E.2d 1122 (1990); Grey v. First National Bank of Chicago, 169
Ill. App. 3d 936, 940-43, 523 N.E.2d 1138 (1988); Scheller v.
Health Care Service Corp., 138 Ill. App. 3d 219, 223-25, 485
N.E.2d 26 (1985). Cf. Hinthorn v. Roland's of Bloomington, Inc.,
151 Ill. App. 3d 1006, 503 N.E.2d 1128 (1987) (involuntary
resignation under threat of discharge satisfies discharge
requirement for retaliatory discharge claim). 
 Plaintiff here asserts that he was compelled to resign in
response to the city's conduct relative to his reinstatement. 
Nowhere is it alleged that the city terminated plaintiff's
employment. In fact, plaintiff admits that the city approved him
for reinstatement with credit for 32 years of service. Moreover,
in paragraph 49 of plaintiff's count I, which is incorporated by
reference into count III, plaintiff states:
 "The refusal of defendants *** to reinstate
 Strocchia after October 1985 unless he waived his
 rights to backpay and seniority constituted a
 termination or constructive discharge of Strocchia
 from his Career Service position with the CPD."
 (emphasis added)
Thus, although plaintiff argues to the contrary, plaintiff's
retaliatory discharge claim is clearly premised upon a theory of
constructive discharge. However, allegations of constructive
discharge will not support a cause of action for retaliatory
discharge. Hartlein, 151 Ill. 2d at 163. Accordingly, the trial
court properly dismissed that part of count III relating to a
claim for retaliatory discharge.
 We also find no error in the trial court's dismissal of
plaintiff's state constitutional claims embodied in count III. 
Although amendment of pleadings should be liberally allowed to
permit the parties to fully present their causes (State Farm Fire
& Casualty Co. v. M. Walter Roofing Co., 271 Ill. App. 3d 42, 49,
648 N.E.2d 254 (1995)), there is no absolute right to amend
pleadings. Weber v. Cueto, 253 Ill. App. 3d 509, 523, 637 N.E.2d
1103 (1994). Rather, the decision to allow amendment lies within
the sound discretion of the trial court and will not be reversed
on review absent an abuse of discretion. In re Estate of Hoover,
155 Ill. 2d 402, 416 (1993). Factors to be considered in whether
the trial court abused its discretion by allowing or denying the
amendment are: 
 "(1) whether the proposed amendment will cure the
 defective pleading; (2) whether the proposed
 amendment would surprise or prejudice the opposing
 party; (3) whether the proposed amendment was
 timely filed; (4) whether the movant had previous
 opportunities to amend." Hoover, 155 Ill. 2d at
 416.
 Here, in light of the plaintiff's request to amend only to
add a count for retaliatory discharge, and the court's order
limiting amendment to that sole issue, the trial court struck
plaintiff's state constitutional claims based on surprise to the
defendant. Because we find that the plaintiff had prior
opportunities to amend and that defendant would be prejudiced by
allowance of such an amendment on the eve of trial, we affirm the
trial court's dismissal.
 Plaintiff claims that his amendment was based on evidence
not disclosed until just before trial which established that, at
the time plaintiff's original suit was filed in January 1986,
city officials had already approved his return at full pay and
seniority. Such information, however, is not a necessary
predicate to plaintiff's state constitutional claims which appear
to be loosely based on a violation by the city of its purported
obligation to provide plaintiff with a remedy for unreasonably
delaying his reinstatement beyond January 1, 1985. Plaintiff
cites to sections 2, 5 and 12 of Article I of the Illinois
constitution, titled "Due Process and Equal Protection", "Right
to Assemble and Petition", and "Right to Remedy and Justice",
respectively. Without regard to whether the allegations in count
III adequately state a cause of action for deprivation of
plaintiff's constitutional rights, plainly, such a theory of
recovery could have been advanced much sooner by plaintiff. The
delay in plaintiff's reinstatement occasioned by the city's
purported conduct has been the gravamen of plaintiff's case since
the inception of this litigation and plaintiff offers no
reasonable excuse for his failure to amend earlier.
 Further, count III appears to suggest a violation of
plaintiff's constitutional rights based on the city's very
handling of this litigation over a period spanning more than
seven years. We note that this is also the subject of
plaintiff's motion for sanctions. Defense of this eleventh-hour
claim would have prejudiced the city by materially changing the
proofs required at trial which had theretofore focused on the
events giving rise to plaintiff's leave of absence from the
police department and the department's subsequent handling of his
request for reinstatement. See State Farm Fire & Casualty Co.,
271 Ill. App. 3d at 49-50. Based on the foregoing, we cannot say
that the trial court abused its discretion by not allowing
amendment of plaintiff's complaint to include state
constitutional claims.
 We also find no error in the trial court's denial of
plaintiff's motion to amend the pleadings to conform to the
proofs. At the close of all the evidence, plaintiff moved,
pursuant to section 2-616 of the Code (735 ILCS 5/2-616 (West
1994)) to amend his complaint by adding state claims for (1)
violations of the city's "rules, ordinances and promises" in
denying plaintiff reinstatement in 1985; and (2) violations of
the state constitutional guarantees of due process and the right
to prompt remedy and justice by contesting plaintiff's rights
throughout eight years of litigation.
 It is axiomatic that the evidence presented at trial must
support the amended pleading. See Pry v. Alton & Southern
Railway Co., 233 Ill. App. 3d 197, 214, 598 N.E.2d 484 (1992). 
Plaintiff, however, points to no evidence that city officials
denied plaintiff reinstatement in contravention of city rules and
a review of the record discloses no such evidence. Further,
contrary to Supreme Court Rule 341 (155 Ill. 2d R. 341(e)(7)),
plaintiff fails to cite any legal authority in support of his
contention that the city's knowledge that it had approved
plaintiff for reinstatement, coupled with its vigorous defense of
plaintiff's various complaints, somehow constitutes a violation
of plaintiff's state constitutional rights. Thus, this matter is
waived on appeal. Pyskaty v. Oyama, 266 Ill. App. 3d 801, 822,
641 N.E. 2d 552 (1994).
 Plaintiff further sought additional equitable relief barring
the city from asserting that the actions of city officials who
failed to reinstate plaintiff in 1985 were random and
unauthorized actions for which the city would not be liable if
adequate procedures were available for review. Plaintiff also
sought an order estopping the city from arguing that plaintiff
could have obtained relief by petitioning for a writ of mandamus
or declaratory judgment. Plaintiff argues that the denial of
such requests led to the adoption of improper jury instructions
and to improper closing argument by the city. However, we need
not consider these issues since we find, as discussed in section
II infra, that the city was entitled to judgment as a matter of
law.
 II
 Plaintiff argues that the trial court erred in giving jury
instructions which contained incorrect and conflicting statements
of the law. Even if true, a new trial is not warranted since we
find that defendant was entitled to judgment as a matter of law. 
See Grass v. Hill, 94 Ill. App. 3d 709, 718, 418 N.E.2d 1133
(1981); Folk v. National Ben Franklin Insurance Co., 45 Ill. App.
3d 595, 599, 359 N.E. 2d 1056 (1976). "If the decision of the
trial court is correct under the circumstances of the case, it
will not be reversed on appeal for the reason that an incorrect
means was used to arrive at the decision, and this is
particularly true where reversal and retrial would only result in
the same decision." In re Marriage of Benefield, 131 Ill. App.
3d 648, 650, 476 N.E.2d 7 (1985). 
 We note, too, that a reviewing court may sustain the
decision of the trial court on any ground supported by the
record. Landmarks Preservation Council of Illinois v. City of
Chicago, 125 Ill. 2d 164, 174 (1988). Further, the scope of
review as to an appellee is not limited to the errors assigned by
the appellant where judgment below was entirely in favor of
appellee. In such a case, an appellee may argue to sustain the
judgment on any basis supported in the record without the need to
file a cross-appeal. People v. Hamm, 149 Ill. 2d 201, 215 (1992).
 Accordingly, we consider the city's argument, advanced
before this court and in its motion for a directed verdict, that
plaintiff failed to present any evidence that a custom, practice,
or policy of the city caused a deprivation to plaintiff of his
procedural due process rights.
 The Civil Rights Act of 1871, codified at 42 U.S.C.  1983,
provides in relevant part:
 "Every person who, under color of any statute,
 ordinance, regulation, custom, or usage, of any
 State *** subjects, or causes to be subjected, any
 citizen of the United States *** to the
 deprivation of any rights, privileges, or
 immunities secured by the Constitution and laws,
 shall be liable to the party injured in an action
 at law, suit in equity, or other proper proceeding
 for redress." 42 U.S.C.  1983 (1988).
The purpose of this statute is to "deter state actors from using
their badge of authority to deprive individuals of their
federally guaranteed rights and to provide relief to victims if
such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, 118 L.
Ed. 2d 504, 511, 112 S. Ct. 1827, 1830 (1992). Where a plaintiff
sues a municipality under section 1983, two distinct issues must
be examined: (1) whether a violation of some constitutionally
protected right caused plaintiff's injury, and (2) whether the
municipality is responsible for the violation. Collins v. City
of Harker Heights, 503 U.S. 115, 120, 117 L. Ed. 2d 261, 270, 112
S. Ct. 1061, 1066 (1992). Examination of the second issue
requires adherence to the rule of law set forth in Monell v. New
York City Department of Social Services, 436 U.S. 658, 50 L. Ed.
2d 611, 98 S. Ct. 2018 (1978). There the United States Supreme
Court held that liability under section 1983 will only attach to
a municipality where the plaintiff's injury was the product of an
official policy, custom, or practice:
 "[A] municipality cannot be held liable
 solely because it employs a tortfeasor--or, in
 other words, a municipality cannot be held liable
 under  1983 on a respondeat superior theory.
 * * *
 Instead, it is when execution of a government's
 policy or custom, whether made by its lawmakers or
 by those whose edicts or acts may fairly be said
 to represent official policy, inflict the injury
 that the government as an entity is responsible
 under  1983." Monell, 436 U.S. at 694 (emphasis
 in original).
See also Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir. 1992);
Ceko v. Martin, 753 F.Supp. 1418, 1421, n.2 (N.D. Ill. 1990);
Veach v. Cross, 178 Ill. App. 3d 102, 109, 532 N.E.2d 1069
(1988); Loftus v. Mingo, 158 Ill. App. 3d 733, 742, 511 N.E.2d
203 (1987).
 Plaintiff here alleged a violation of his procedural due
process rights. To sustain such a claim, plaintiff must
demonstrate: "(1) a cognizable property interest; (2) a
deprivation of that property interest; and (3) a denial of due
process." Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th
Cir. 1993). As plaintiff correctly maintains, a police officer
has a property interest in his continued employment (Dudycz, 206
Ill. App. 3d at 135), as well as the benefits, such as salary,
associated with that employment, which cannot be taken away
without due process. Ceko, 753 F. Supp. at 1423. Preliminarily,
we note that plaintiff was not on the police department's
payroll. Assuming, however, that plaintiff's property interest
in continued employment with the department was unaffected by his
on-leave status, the evidence adduced at trial failed to
demonstrate a deprivation. 
 The evidence established that plaintiff was approved for
reinstatement at full seniority and the highest pay scale, that
an agreed start date was established which accommodated
plaintiff's vacation, that plaintiff failed to report for duty as
agreed, and that plaintiff subsequently resigned. There was no
evidence that plaintiff's employment was terminated or that he
was prevented from returning to active duty with the department.
 Plaintiff, nonetheless, attaches much importance to the fact
that no one from the city advised plaintiff that he had been
approved for reinstatement on the terms sought. Joseph Beazley,
Director of Personnel, testified that the personnel section had a
responsibility to so notify plaintiff. Even if true, a mere lack
of due care by a state official is not a deprivation. See
Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct.
662 (1986) (due process clause not implicated by negligent act of
state official causing unintended loss of or injury to life,
liberty, or property; to hold otherwise would trivialize due
process law). Without a deprivation of plaintiff's property
interest, the issue of due process never arises. Schroeder v.
City of Chicago, 927 F.2d 957, 960 (7th Cir. 1991). Similarly,
negligent supervision of subordinates will not give rise to
liability under section 1983. Wilson v. City of Chicago, 6 F.3d
1233, 1241 (7th Cir. 1993).
 While plaintiff generally asserts a right to continued
employment, he also more specifically asserts a right to
immediate reinstatement at a particular salary and seniority
level. We note that property rights are not conferred by the
constitution. "Rather, they are created and their dimensions are
defined by existing rules or understandings that stem from an
independent source such as state law ***." Board of Regents of
State Colleges v. Roth, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561,
92 S. Ct. 2701, 2709 (1972). 
 Here, there was evidence that, according to departmental
policy, an officer such as plaintiff who is returning from an
approved leave of absence to perform other law enforcement work,
would be credited with full seniority, salary and benefits. 
Plaintiff nonetheless fails to identify the source of his alleged
property interest in immediate reinstatement upon application. 
The department's leave of absence policy on which plaintiff
generally appears to rely does not require immediate
reinstatement:
 "When a leave has been granted properly and when
 the member is prepared to return to work in
 conformity with the terms and conditions of the
 leave of absence, the member *** will be restored
 to his or her position in the career service,
 provided that the position is available." 
Thus, restoration of plaintiff to his career service position
must be in conformity with the terms and conditions of the leave
of absence. As the trial court observed, the evidence
established that an officer returning from a leave of absence
such as plaintiff's is required to undergo a medical screening. 
Nowicki, Beazley, Sheerin and Mesnick all testified accordingly. 
The only witness who testified to the contrary was Brzeczek. 
Additionally, John Dineen, President of the Fraternal Order of
Police, Lodge 7, testified that he was aware that the department
has requirements for mandatory physicals under certain
circumstances and that such requirements are permissible under
the collective bargaining agreement. Furthermore, pursuant to a
general order of the department, exempt members of the department
or the Chief Police Surgeon may order any member to submit to a
physical examination to determine fitness for duty. 
Significantly, plaintiff presented no evidence that the fitness-
for-duty requirement had been waived as a condition of his leave
of absence. Having thus failed to establish that he had a
cognizable property interest in immediate reinstatement,
plaintiff's procedural due process claim cannot be maintained on
this basis. See Schroeder v. City of Chicago, 927 F.2d 957 (7th
Cir. 1991) (former fire fighter's section 1983 suit complaining
of delay in payment of disability benefits dismissed where no
entitlement to immediate payment of benefits was established
under governing statute).
 Even if the reasonable inferences to be drawn from the
evidence here established both a property interest and a
deprivation, because there was no evidence that such deprivation
was the result of an official policy, custom or practice of the
city, plaintiff's claim must fail. See Monell, 436 U.S. at 694. 
Although plaintiff disputes that he was required to prove this
element of his section 1983 claim, the case law is clear that no
liability to a municipality will result unless an official policy
of the municipality is the "moving force" of the constitutional
violation. Monell, 436 U.S. at 694. The record is devoid of any
evidence of a municipal policy at work here. 
 At most, the evidence establishes that Deputy Superintendent
of Police Nowicki misstated departmental policy when he allegedly
advised Brzeczek that plaintiff could only return as a new hire. 
Such isolated conduct of a municipal official will only sustain a
section 1983 claim against the municipality where the official
had final policymaking authority in that area of the
municipality's business and a governmental policy could thus be
inferred. City of St. Louis v. Praprotnik, 485 U.S. 112, 121-27,
99 L. Ed. 2d 107, 116-20, 108 S. Ct. 915, 923-26 (1988). 
Plaintiff does not argue on appeal, nor are we otherwise
persuaded, that Nowicki possessed final policymaking authority
for the city as to pay and seniority terms under which an
officer's reinstatement would be approved. See Auriemma v. City
of Chicago, 747 F. Supp. 465 (N.D. Ill. 1990), aff'd, Auriemma v.
Rice, 957 F.2d 397 (7th Cir. 1992)(police superintendent does not
possess final policymaking authority for municipal employment
policy and thus city not liable under section 1983 for allegedly
discriminatory employment decisions by superintendent). 
Moreover, even if Nowicki's purported statements to Brzeczek
served to defeat a municipal employment policy, no section 1983
liabilility will attach. Auriemma, 957 F.2d at 400 (Monell tells
us that to hold the municipality liable, the agent's action must
implement rather than frustrate the government's policy). 
 Considering the evidence in the light most favorable to
plaintiff and making all reasonable inferences therefrom, we
conclude that the evidence so overwhelmingly favors the city that
no contrary verdict could ever stand. See Maple v. Gustafson,
151 Ill. 2d 445, 453 (1992). Plaintiff simply failed to
establish the essential elements of his section 1983 cause of
action. Thus, any error as to the propriety of the jury
instructions will not provide a basis for reversal. See Grass v.
Hill, 94 Ill. App. 3d at 718.
 We also find that admission into evidence of certain
conversations between plaintiff and Brzeczek concerning
Brzeczek's conversations with Nowicki would not add materially to
the proofs presented at trial and would not alter this court's
conclusion that the city was entitled to judgment as a matter of
law. Therefore, any error by the trial court in granting the
city's motion in limine to bar such evidence was at most
harmless. See Ford v. City of Chicago, 132 Ill. App. 3d 408, 416,
476 N.E.2d 1232 (1985). We similarly find that any error in
withholding from the jury pleadings filed in plaintiff's 1986
chancery court action was harmless. 
 Based on the foregoing, we affirm the judgment of the trial
court in favor of the city as to defendant's section 1983 claim.
 III
 Finally, plaintiff contends that the trial court erred in
denying his motion for sanctions. Plaintiff argues that the city
failed to perform any investigation into the facts and law of the
case or, alternatively, withheld highly relevant information. 
Specifically, plaintiff claims that the city failed to disclose
that plaintiff had been approved for reinstatement on the terms
sought, and that the city acted inconsistently with such
information by denying, throughout the course of this litigation,
that plaintiff had any entitlement to return to his job with full
pay and seniority.
 Sanctions may be imposed under Supreme Court Rule 137 where
a party or counsel files a pleading which is not well grounded in
fact, is not warranted by existing case law or a good-faith
argument for the extension, modification, or reversal of existing
law, or is interposed for any improper purpose. 155 Ill. 2d R.
137. Because the rule is penal in nature, it will be strictly
construed. In re Marriage of Pitulla, 256 Ill. App. 3d 84, 90,
628 N.E. 2d 563 (1993). The test for determining whether a
violation has occurred is an objective standard of what was
reasonable under the circumstances at the time of filing. 
Village of Lake Barrington v. Hogan, 272 Ill. App. 3d 225, 235, 
649 N.E.2d 1366 (1995). The grant or denial of a motion for
sanctions is within the sound discretion of the trial court and
will not be reversed on review absent an abuse of discretion. In
re Estate of Wernick, 127 Ill. 2d 61, 77-78 (1989).
 Based on our review of the record, we cannot say that the
trial court abused its discretion in denying plaintiff's motion
for sanctions. Plaintiff seems to suggest that there was
something inherently improper about the city's challenge to the
legal sufficiency of plaintiff's various complaints. Plainly,
however, before proceeding to the merits of plaintiff's claims,
it was incumbent upon plaintiff to state a valid cause of action. 
Similarly, there was nothing improper about the city's challenge
to plaintiff's claims on procedural grounds. We note that the
city prevailed on several of the motions plaintiff seeks to
characterize as frivolous. 
 We also reject plaintiff's contention that the city
improperly withheld information relative to the department's
approval of plaintiff's reinstatement, resulting in protracted
litigation. Plaintiff argues that rather than acknowledge that
plaintiff's reinstatement had been approved at full pay and
seniority, the city responded to his initial complaint in the
chancery court with a motion to strike and dismiss. Again, we
cannot say that the city's challenge to the legal sufficiency of
plaintiff's complaint was improper. Further, plaintiff's amended
complaint in chancery was dismissed for want of prosecution. 
Thus, any delay in the ultimate resolution of plaintiff's claims
arising out of his chancery court action is not the fault of the
city.
 In addition, by the time plaintiff filed the instant action
in the law division, he had already resigned to accept his
retirement pension more than a year prior. Based on department
rules, thirty days after the effective date of plaintiff's
resignation, he would not have been entitled to reinstatement
except as a new hire. Thus, we cannot say that the city's denial
of a right to reinstatement at that time was necessarily
inconsistent with the city's knowledge that plaintiff had
previously been approved for reinstatement on the terms sought. 
Moreover, the mere fact that the city approved plaintiff's
request for reinstatement is not tantamount to recognition by the
city of a property interest in immediate reinstatement. Thus,
there was nothing improper about defending this action on the
basis that plaintiff had no such property interest. Finally,
plaintiff fails to identify what other state law claims he might
have pursued had the city informed him that he had been approved
for reinstatement at full pay and seniority in September 1985. 
In any event, there is no evidence that the city withheld
information merely to frustrate plaintiff's ability to pursue
additional claims against the city or for any other improper
purpose. Accordingly, we affirm the trial court's denial of
plaintiff's motion for sanctions.
 For all the foregoing reasons, the judgment of the trial
court in favor of the city is affirmed.
 AFFIRMED.